WASHINGTON GROVE ASSOCIATION OF THE DIS-
TRICT OF COLUMBIA AND MARYLAND

*vs.*

ROBERT H. WALKER and MYRA ESTELLE
WALKER.

*Corporations: stockholders; no right to deed for any particular*
*part of corporate property.  Camp-*
*meetings: lot owner's rights.*

Where, in virtue of certain certificates of stock in a camp-
meeting association that had become incorporated, a stockholder
sought to compel the execution to him of a lease or deed for
certain lots in the grounds of the association, it was: *Held,* that:

Nothing in the charter or by-laws of the Washington Grove
Association of the District of Columbia and Maryland requires
it to execute a lease or deed to the stockholders for lots located
by them, as sought in this case.                          p. 98

In general a stockholder of a corporation is not entitled to a
lease or deed for any part of the property of the corporation, in
the absence of any valid and binding agreement to that effect.
                          p. 97

*Decided February 29th, 1916.*

Appeal from the Circuit Court for Montgomery County.
In Equity.  (PETER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Frank Higgins* and *John Ridout* (with whom was *L. Cabell Williamson* on the brief), for the appellant.

*Robert B. Peter* (with whom was *Robert H. Walker* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

The appellant was incorporated by the Act of 1874, Chapter 135, which states in its preamble: "Whereas certain ministers and laymen of the Methodist Episcopal Church in the District of Columbia and in Maryland have associated themselves together for the purpose of forming Camp-Meeting and Excursion Association, and have applied to the Legislature of Maryland for an Act of Incorporation, to better enable them to accomplish their purpose," etc. Section 1 provided that the twenty-five persons named therein, "together with the subscribers of the stock of the association and their successors, shall be, and they are hereby declared to be, a body politic and corporate, by the name and style of the 'Washington Grove Camp-Meeting Association of the District of Columbia and Maryland' and by that name shall have succession, and be capable in law to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all courts of law and equity, or elsewhere, to make and use a common seal, and the same to alter and renew at their pleasure, and generally to do and perform all things relative to the objects of this Association which now is or shall be lawful for any individual or body politic or corporate to do, and shall have power to make and enforce rules, bylaws, and ordinances, and to do and transact all and every such matters and things as are necessary and proper for the good government, support and furtherance of the said Association." Section 2 authorized the Association to purchase, receive, hold and enjoy, all lands and property, of every kind, and to grant, sell, lease, convey, dispose of and encumber the same. Section 3 declared: "That the objects and purposes of said Association are to obtain and hold land to

be used under the direction of the Association, for excursions from churches, Sunday schools, and other moral and benevolent associations, and to hold camp-meetings or other religious meetings, in accordance with the usage of the M. E. Church, to ornament, embellish, grade, and supply the said grounds with all necessary roads, and when necessary, to alter and change the location of roads, and to erect on the same such tenements and houses, and to make such provisions for supplying water and light as may be needed in carrying out the design and purpose of the Association, and generally to manage, improve, lease and dispose of said land, and to do any manner of thing that said Association may deem necessary or proper, and not inconsistent with the laws of this State." Section 4 named the persons who should be the trustees of the Association until the second Monday in May, 1874, and manage the affairs of the Association. Section 5 fixed the capital stock of the Association at twenty thousand dollars, "divided into one thousand shares of twenty dollars each," and provided that the surplus funds of the Association remaining after defraying all necessary expenses for the purchase of lands, "cost of all improvements, and care of the property and after the stockholders shall have received dividends not exceeding six per centum per annum on the amount actually paid in on their stock shall be securely invested by the Trustees for the subsequent care and improvement of the premises, and to defray, as far as possible, the expenses of the annual camp-meetings of the Association, and for no other purpose whatever." Section 6 provided for the election by the stockholders at their annual meeting, to be held on the second Monday of May of each year, or at such other time as might be fixed by the Association, of an executive committee and a board of trustees, and section 7 declared that no license should be issued by any authority for the sale or barter in any way "of spirituous or malt liquors, wines, or cider within two miles of the camp-ground of the said Association."

By the Act of 1886, Chapter 90, sections 2 and 6 of the Charter were amended and a new section added thereto.

These amendments authorized the trustees to make an annual assessment "upon the stockholders of the association, or upon the lots and improvements thereon, within the camp-ground limits, and enforce the collection of the same for the purpose of meeting the legitimate camp-meeting expenses," etc.; provided for the election of a board of twenty-five trustees, who should be shareholders, to manage the affairs of the association according to the rules and by-laws thereof, and authorized the sheriff of the county in which the camp-ground is located to appoint as many constables or peace officers as the trustees deem necessary for the purpose of preserving order on the camp-grounds and premises. Section 6 was further amended by the Act of 1890, Ch. 19, so as to provide for the election of nine trustees instead of twenty-five, and by the Act of 1908, Ch. 467, the name of the Association was changed to "Washington Grove Association of the District of Columbia and Maryland."

The Association purchased a large tract of land in Montgomery County, Maryland, and sub-divided a large part of it into streets, alleys, blocks and lots according to a plat or map of the grounds adopted by the Association and recorded among the Land Records of Montgomery County. By what are called the "old by-laws," a copy of which was filed with the bill in this case, the trustees were given control of the property of the Association; were authorized to appoint a committee on religious services; to fix the price of all platted lots; to lease them in accordance with the by-laws, and to assess the lots and improvements thereon. Section 39 provided how the certificates of stock should be executed, and that they should be "issued only upon the authority of the trustees, and to such persons as they may approve as proper persons to be stockholders of this Association." Section 42 provided that no transfer of stock should be valid without the consent of the trustees, endorsed upon the certificate of stock by the president and secretary of the Association, and that the transfer should be entered upon the stock book of the Association by its secretary, and that the book should be

kept in such manner as to show all transactions in relation to the stock. Section 47 was as follows: "Hereafter title to selected lots shall be by lease, for a period of ninety-nine years, subject to conditions imposed by these by-laws, or which may hereafter be imposed by such by-laws of the Association as are in force when said lease is executed; and no condition shall be imposed having a retrospective effect. Said lease shall be given in the corporate name of the Association by its duly authorized attorney, and shall be countersigned by the president and secretary, and be sealed with the seal of the Association; and the trustees are authorized to appoint an attorney for the said purpose." Section 48 contained certain provisions to be inserted in the lease referred to in section 47, and section 49 provided that every lessee of land owned by the Association should hold in his or her name at least one share of the capital stock, and that "the value of the stock of the Association, owned by the lessee, as determined by its by-laws, may be credited in the amount of value, or bonus, which is paid for the land thus secured by lease from the Association."

On the 12th of April, 1907, the Association adopted a new set of by-laws, spoken of in the record as the "new by-laws." Section 23 of the new by-laws fixes the market value of the stock at $20.00, and provides that it shall not be sold by the trustees except for cash. Section 24 requires the certificates of stock to be signed by the president, countersigned by the secretary, and sealed with the seal of the Association, and provides that they shall be issued only upon the authority of the trustees, and to such persons as they may approve as proper persons to be stockholders of the Association; that no transfer of stock shall be made to any person until they have been approved by the trustees as proper persons to be stockholders of the Association, and that such stock shall not be good and valid without the consent of the trustees, endorsed upon the certificate of stock by the president and secretary, and that such transfer shall be entered upon the stock book of the Association by its secretary, and the book shall

be kept in such manner as will show all transactions in relation to the stock. Section 26 provides that the "laying out of lots," etc., shall only be in accordance with the official plat or map of the grounds of the Association on file in the office of the Clerk of the Circuit Court for Montgomery County, and that a copy of the plat shall be kept in the custody of the secretary of the Association. Section 27 provides that the trustees shall fix the price of all platted lots, "provided, that the minimum price shall not be less than one hundred dollars for lots of fifty feet frontage, and lots with smaller frontage to be at proportionate rates." Section 28 is as follows: "All stock must be located on such unlocated lot as shall be selected by the stockholder and approved by the Board of Trustees, the stockholder to pay in cash the difference in value between the face value of the stock and the value placed upon the lot by the Board of Trustees; provided, that not less than one share of stock shall be so applied and that no fractional part of any share in excess of one share shall be permitted in the said payment and there shall be at least one share of stock for each ten feet front or any fractional part thereof on all lots outside of the Tent Department and for said Tent Department there shall be at least one share of stock for each twenty feet front or fraction thereof. The number of the lot and block shall be written upon the face of the stock by the secretary. A certificate shall be given to the stockholder in the corporate name of the Association, duly signed by its president, sealed with its seal, and attested by its secretary, and duly appointing and authorizing an attorney to acknowledge the same on behalf of said Association; and the trustees are authorized to appoint an attorney for the said purpose. Said certificate is to certify that * * * is the holder of * * * shares of stock of the Washington Grove Association of the District of Columbia and Maryland issued on the * * * day of * * * A. D. * * * and numbered * * * which has been located on lot number * * * block numbered * * * on the plat of the grounds of the Washington Grove Association of the District of Columbia and Maryland as said plat is recorded

in Plat Book No. 1, one of the Land Records of said Montgomery County, as plat 22, and that said stock and lot are both held subject to the conditions imposed by the Charter, amendments thereto and by-laws of the Washington Grove Association of the District of Columbia and Maryland, and subject to the further condition that no place of business shall be opened or continued on the property so located without the annual written authority from the Board of Trustees, and under the rules of the Association, and no practices shall be permitted on said property which are inconsistent with good morals as judged by the Christian standards, as prescribed or restricted and interpreted by the Board of Trustees."

On the 22nd day of May, 1914, the Association issued to Robert H. Walker and M. Estelle Walker, his wife, the following certificate:

"*This Certificate,* Made this twenty-second day of May, A. D. nineteen hundred and fourteen, witnesseth, that the Washington Grove Association of the District of Columbia and Maryland certifies that Robert H. and M. Estelle Walker are the holders of five shares of stock of the Washington Grove Association of the District of Columbia and Maryland, issued on the 8th day of September, A. D. 1913, and numbered 864, which has been located on lot No. 17 in block No. 26 on the plat of the grounds of the Washington Grove Association of the District of Columbia and Maryland, as said plat is recorded in Plat Book No. 1 of the Land Records of Montgomery County as Plat No. 22, and that said stock and lot are both held subject to the conditions imposed by the Charter, amendments thereto, and By-Laws of the Washington Grove Association of the District of Columbia and Maryland, and subject to the further condition that no place of business shall be opened or continued on the property so located without annual written authority from the Board of Trustees and under the rules of the Association, and no practices shall be permitted on said property which are inconsist-

ent with good morals as judged by Christian standards as prescribed or restricted and interpreted by the Board of Trustees.

"And the said Washington Grove Association of the District of Columbia and Maryland hereby appoints B. H. Brockway its true and lawful attorney in fact to acknowledge these presents to be the act and deed of said Association.

"In witness whereof, the said Washington Grove. Association of the District of Columbia and Maryland has caused these presents to be signed by its President, attested by its Secretary and the Corporate Seal thereof to be affixed, and the said Robert H. and M. Estelle Walker have hereunto set their hand and seal the day and year first above written.

"L. Cabell Williamson,        (Seal)
"President.

"Robert H. Walker,        (Seal)
"Shareholder.

"M. Estelle Walker.        (Seal)

"(Corporate Seal)

"Signed, sealed and delivered in the presence of
"(Corporate Seal)                    R. H. Walker,
                                   "Secretary.

"District of Columbia, ss.:

"I hereby certify, that on this 23rd day of May, A. D. 1914, before me, the subscriber, a Notary Public, in and for the District of Columbia, personally appeared B. H. Brockway, Attorney in Fact, appointed by the Washington Grove Association of the District of Columbia and Maryland, and acknowledged the above and annexed certificate as and for the act of said Association for the uses and purposes therein mentioned.

"Sarah A. Taylor,
"(Notarial Seal)                    Notary Public."

Walker and wife took possession of the lot described in the certificate and expended in the erection of a dwelling house

and other improvements thereon about $1,350.00. In May, 1914, they requested the trustees to give them a lease for lots 16, 17, 18 and 19 in block No. 26, for ninety-nine years, renewable forever, which the trustees refused to do on the ground that under the existing by-laws they had no authority to give the lease. At the annual meeting of the stockholders on the 30th of May, 1914, they again demanded or requested a lease or deed for the lots mentioned. Their request was not granted or refused, but the stockholders adopted a resolution authorizing the appointment of a committee to investigate the matter. Pending the appointment of the committee Walker and wife on the 30th of June, 1914, filed the bill of complaint in this case in the Circuit Court for Montgomery County against the Association to compel it to execute to them a lease for ninety-nine years, etc., or a deed for the lot described in their certificate. The contention of the plaintiffs in their bill is that the new by-laws provided that "All by-laws heretofore made inconsistent with these by-laws are hereby repealed"; that section 47 of the old by-laws was not repealed by the new by-laws, and that if it was so repealed they are entitled to a deed for the lot in fee.

In its answer the defendant insists that there was a complete revision of the by-laws in 1907, and that the new by-laws were adopted in lieu of the old by-laws; "That all of the old by-laws not included in the revision were repealed,—that the provisions of the revised by-laws are inconsistent with section forty-seven of the old by-laws," and that in the place of the lease provided for in the old by-laws the new by-laws provide in section twenty-eight that the lots shall be held under the certificate therein mentioned. The answer further alleges that the lease referred to in the old by-laws was never intended to convey the title to the lot to the person therein named and that it could not have that effect under the charter and by-laws of the Association, and that the certificate provided for by the new by-laws was not intended to operate as a conveyance of the title to the lot "in the ordinary sense of the word," but was given as the evidence of the right of

the stockholder to hold and enjoy the lot under the rules and regulations of the Association; "that it is necessary to maintain the control of the camp-meeting grounds of which the lot in question is a part, in order that it may carry out the object and purposes of its charter and for that reason its by-laws, which were in force when the stock and location thereof on the lot in question was made, did not provide for any leases or transfer of the property other than that of location and use of the same by one of its stockholders, and the issuance of a certificate acknowledged before a notary public was in conformity with its by-laws and was not intended in any way to interfere with the registration laws of the State of Maryland in respect to transfers; that unless the defendant is permitted to follow its by-laws in this respect, undesirable persons can come into its camp-meeting grounds and destroy the object and purposes for which it was organized; that the Association has paid and still continues to pay the taxes, both County and State upon the lot in question * * * and the taxes on the improvements are paid by the persons locating the lot; that this respondent believes that this is the proper way and method to carry out and effect the object and purposes of its charter and that no harm has come or can come to the plaintiffs in holding and using the lot under such rules and regulations and by such stock location and certificate, but that should the Court require this respondent to make leases or give titles of any or different kind than those provided in its by-laws, and which have been given to the plaintiffs in this case, it would prevent respondent from carrying on its work for which it was organized and would work a dissolution of said corporation as it could not protect itself from improper persons and from improper use of the grounds by holders of such lots."

The case was submitted in the Court below on the bill, answer and agreed statement of facts, and it appears from the latter that no leases were given by the Association prior to 1884 or after November 20th, 1905, and that about one hundred leases were executed between those dates. Since

January 1st, 1908, about three hundred certificates like the one issued to the plaintiffs have been issued to stockholders, without any other evidence of title. All of the lots that have been located were located with stock, and with the consent of the trustees. Under the old by-laws there was nothing in the printed certificate of stock showing the location of the lot or lots, but by the new by-laws the form of the certificate was changed to that of the certificate issued to the plaintiffs. Prior to November 20th, 1905, whenever a stockholder who had located a lot by his certificate requested the board of trustees to give him a lease on the lot in connection with his certificate of stock the lease was executed, and "whenever the stockholder sold his stock and lot and the purchaser was accepted by the board of trustees, new stock was issued to the purchaser, and located on the same lot," and if a lease had already been granted, the trustees, if requested to do so, would consent to its transfer or assignment to the new holder. But no papers purporting to be leases were issued after the revision of the by-laws on April 12th, 1907. One hundred and twenty-eight dwellings have been erected on lots held by stockholders, and the improvements on said lots are assessed by the County Commissioners of Montgomery County for the purpose of taxation at from one hundred dollars to fourteen hundred dollars. The Association pays the State and County taxes on all the lots, and the stockholder whose stock has been located on a lot, pays the taxes on the improvements on the lot. "None of the papers purporting to be leases were issued to any one" except stockholders, who had located their stock on the particular lot or lots. The subdivision of the defendant's land, in which the plaintiffs' lot is located, is "sub-divided into thirty-five blocks, with a total of five hundred and eighty-seven lots." The stipulation of facts contains the further statement: "That Robert H. Walker, the plaintiff in this case, is a lawyer, and has been practicing law six years, that he was secretary of the defendant Association from May 30th, 1912, to May 30th, 1914, and that on July 16th, 1912, he, together with Messrs. Bouic

& Bouic, filed an answer in a proceeding instituted in this Court by Maude E. Graham against the defendant in this cause, in which the same contention was made as is made by the defendant in this cause, that is, that the defendant under its charter and by-laws, had no power to execute leases for any of its lots in the sub-division spoken of in these proceedings."

We have set out the provisions of the charter and by-laws of the Association and the facts of the case at some length because they show conclusively that the plaintiffs are not entitled to the relief prayed. It is apparent that the Association never intended, either by the leases executed in accordance with the old by-laws, or the certificate issued under the provisions of the new by-laws to part with its control of or title to the lots assigned to its stockholders. Under the old by-laws the certificates of stock were issued only upon the authority of the trustees, and to such persons as they approved "as proper persons to be stockholders in the Association"; the leases provided for in section 47 were only given to stockholders who had located their lots, and the stock and lots could not be assigned without the assent of the trustees. Moreover, the form of the lease adopted by the Association, a copy of which was filed with the bill, contained a clause in which the lessee covenanted not to assign or dispose of any part of the premises to any person or persons without the consent in writing of the Association. The new by-laws contain similar provisions in reference to issuing the certificates of stock and the transfer of the stock, and section 28 expressly provides that "All stock must be located on such unlocated lot as shall be selected by the stockholder and approved by the Board of Trustees," and the form of the certificate adopted in that section contains the provision, found in the certificate issued to the plaintiffs, "that said stock and lot are both held subject to the conditions imposed by the charter, amendments thereto and by-laws of the Washington Grove Association of the District of Columbia and Maryland."

It seems equally clear that the adoption by the Association of the new system of by-laws operated as a repeal of section 47 of the old by-laws. The certificate adopted in section 28 of the new by-laws contains the conditions upon which the stock and lots are to be held, and was manifestly adopted in lieu of the lease provided for in the old by-laws. The new by-laws were so understood and acted upon by the Association and its officers; and no leases were ever issued after their adoption, notwithstanding three hundred certificates like the one issued to the plaintiffs were issued after the new by-laws went into effect.

It can hardly be contended that a stockholder of a corporation is entitled to a lease or deed for any part of the property of the corporation in the absence of a valid and binding agreement to that effect, and the record shows that at the time the plaintiffs became stockholders of the Association there was nothing in its charter or by-laws to support their claim in this case.

The learned Court below took the view that that charter of the Association does not authorize the provision of the by-laws requiring the assent of the trustees to the transfer of its stock, and that under the rule recognized in *Bloede Co.* v. *Bloede,* 84 Md. 129, the attempted restriction is invalid; that the evident purpose of the certificate issued to the plaintiffs was to convey to them title to the lot without any limitations upon the tenure, and accordingly passed the decree, from which this appeal is taken, requiring the defendant to convey the lot to the plaintiffs in fee.

We are not required in this case to determine whether the rule referred to in reference to restrictions upon the transfer of the capital stock of a corporation is applicable to a corporation like the defendant, or whether the plaintiffs in this case are not bound by such restrictions contained in the by-laws of the Association, of which Robert H. Walker had full knowledge. (1 *Machen on Corporations,* secs. 707-708; *New England Trust Co.* v. *Abbott,* 162 Mass. 148, 27 L. R. A. 271; *Graflin Co.* v. *Woodside,* 87 Md. 146.) All that we are

required to decide is whether the plaintiffs are entitled to a lease or deed for the lot described in their certificate. As we have said, section 47 of the old by-laws was repealed by the adoption of the new by-laws, and as there is no provision in the charter or existing by-laws requiring the Association to execute a lease or deed to the stockholders for the lots located by them there is no authority upon which the plaintiffs can rest their demand. In the case of *Walker* v. *Washington Grove Association,* 127 Md. 564, where a bill was filed to compel the Association to execute a deed to the lessee of one of its lots, under the provisions of Article 21, section 92 of the Code, and where the Court held that the lease executed by the Association was not subject to the Act of 1884, Chapter 485, CHIEF JUDGE BOYD said: "It can not be contended that it was ever intended that the Association should surrender its entire ownership and control of the lots in the cottage department, where this lot is. The stipulation of facts shows that it pays the State and County taxes on the lots, and the leaseholders pay them on the improvements. There is no covenant or agreement by the lessee to pay the taxes on the ground included in the lease, as is the custom in ordinary leases for ninety-nine years, and these leases were only made to stockholders who had located their stock on the particular lot or lots."

It follows from what has been said that the decree of the Court below must be reversed.

*Decree reversed, the appellees to pay the costs in this Court and in the Court below, and bill dismissed.*