SAMUEL E. KRAMER ᴇᴛ ᴀʟ. *v.* MAYOR AND CITY
COUNCIL ᴇᴛ ᴀʟ.
[No. 125, October Term, 1933.]

*Decided February 7th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Herbert Levy* and *C. Arthur Eby,* with whom was *A. Cecil Snyder* on the brief, for the appellants.

*Ernest F. Fadum, Assistant City Solicitor,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

As the owners of a lot of ground and building at the northeast corner of Mt. Royal Avenue and McMechen Street in the City of Baltimore, the appellants applied to the buildings engineer of the city for a permit to construct on the premises a filling station with six gasoline tanks and pumps. The application was refused, and a suit in equity for a mandatory injunction to compel the issuance of the desired permit having been dismissed on demurrer, this appeal has resulted.

The refusal of the buildings engineer to issue a permit to the appellants for the erection of the proposed filling station is alleged in the bill of complaint to have been based upon the follow grounds:

(1) Ordinance No. 243 of the Mayor and City Council of Baltimore, approved October 18th, 1924, prohibits the erection, alteration, or use of any structure for the sale of gasoline or other motor fuel within three hundred feet of any church building in the city, and the premises of the plaintiffs are within that distance of the North Baltimore Methodist Protestant Church.

(2) Ordinance No. 1247 of the Mayor and City Council of Baltimore, approved March 30th, 1931, and known as the "Zoning Ordinance," provides in paragraph 34 that a filling station for the sale of inflammable liquids may be permitted

only by authority of an ordinance of the Mayor and City Council, even in a district where such a use of property is not prohibited by the use regulations under the zoning law, and there is no ordinance permitting a filling station on the plaintiff's property.

The bill states that the site at which the plaintiffs wish to operate a filling station is within a first commercial use district, as designated in the Zoning Ordinance, the terms of which do not exclude filling stations from such a district, and that the premises of the plaintiffs are adaptable for only a limited number of uses and are most suitable for use as a filling station. It is admitted by the bill that the plaintiff's property is about one hundred and fifty feet from the North Baltimore Methodist Protestant Church on the other side of Mt. Royal Avenue, which is about one hundred and twenty-five feet wide. There are alleged to be two gasoline pumps and tanks within fifty feet of the church property, and immediately in its rear a large automobile washing and greasing establishment. It is averred that the filling station for which a permit has been requested by the plaintiffs "would not in any way constitute a nuisance, nor create a fire or traffic hazard, nor in any way be detrimental to the public health, safety, morals, comfort, convenience or welfare," and would in no way menace the safety of the church property or interfere with its convenient, comfortable, peaceful, and quiet use for its customary purposes.

Additional allegations in the bill are: That the City Council refused to waive, with respect to the plaintiff's property, the inhibition of Ordinance No. 243 against the erection of filling stations within three hundred feet of a church building, and failed to pass an ordinance, in accordance with the provisions of paragraph 34 of the Zoning Ordinance, to permit the plaintiffs to construct and operate a filling station at the proposed site; that numerous ordinances have been passed by the Mayor and City Council permitting the erection of filling stations within three hundred feet of churches, including the North Baltimore Methodist Protestant Church; that permission has been granted by ordinance in many in-

stances, under paragraph 34 of the Zoning Ordinance, for the construction of filling stations in the first commercial use district, in which the plaintiffs' property is located; that Ordinance 243, as applied to their property, is null and void as an arbitrary and unreasonable deprivation of their property without due process of law, beyond the scope of a valid exercise of the police power, and in violation of the Fourteenth Amendment of the Federal Constitution; that paragraph 34 of the Zoning Ordinance, so far as it requires a special ordinance to grant permission for the location of filling stations in a use district where they are not forbidden under the zoning law, is void in that it violates the provisions for uniformity and comprehensiveness in chapter 705 of the Acts of 1927 of the General Assembly, enabling Baltimore City and certain other municipalities to enact zoning ordinances for their respective governmental areas.

The right asserted in this suit cannot be judicially recognized unless it is determined that, as against the property interests of the plaintiffs, both of the ordinances mentioned in the bill are invalid. Either would prevent the issuance of the permit which is here sought to be compelled. The validity of each of those enactments, as against the objections urged in this case, depends to a large extent upon similar considerations.

In utilizing the zoning power conferred by the enabling act of the General Assembly, the Mayor and City Council expressly reserved authority to control by their own direct legislative action the location of filling stations in any part of the city from which they were not excluded by the provisions of the Zoning Ordinance. It was competent for the municipal government to make such a reservation. The enabling act of 1927 (section 1) provided that all zoning regulations "shall be uniform for each class or kind of buildings throughout each district," but need not be the same for all districts, and "shall be made in accordance with a comprehensive plan." These requirements of uniformity and comprehensiveness for the regulations which the Zoning Ordinance might prescribe were not incompatible with the reten-

tion by the Mayor and City Council of the power to legislate separately with respect to the issuance of permits for filling stations in areas where, by the Zoning Ordinance, they are not definitely prohibited. The nature of that class of uses is such as to make them a proper subject of special municipal regulation. In residential districts they are wholly forbidden by the Zoning Ordinance, but the only right to restrict their location in other districts is that which is reserved to the Mayor and City Council. The alternatives to that policy would have been to leave unrestricted the right to erect filling stations in nonresidential districts, or to delegate to administrative officials the power and duty to determine, in conformity with duly prescribed standards, whether applications to conduct such enterprises in particular locations should be granted or refused. In reserving that function for its legislative action, the city government could not be held to have exceeded its authority. The considerations affecting the comprehensive solution of such a municipal problem are clearly appropriate for the exercise of the city's legislative judgment.

This court, in a series of cases, has sustained ordinances prohibiting the erection of various structures without a permit from the governing body of the municipality.

In *Commissioners of Easton v. Covey,* 74 Md. 262, 22 A. 266, a permit for the erection of a frame stable on Harrison Street in Easton having been refused, the applicants disputed, in a mandamus suit, the validity of the ordinance by which such a permit was made a condition to the construction of specified buildings. The opinion in that case said (pages 267-269 of 74 Md., 22 A. 266): "We think it very clear, that under a general power to pass such ordinances as the commissioners may deem necessary and beneficial to the town, the commissioners may pass any ordinance which they may judge necessary and beneficial, and it will be valid, provided it be reasonable and consonant with the general powers and purposes of the corporation, and not inconsistent with the laws and policy of the state. 1 *Dillon, Mun. Corp.;* secs. 316, 319; *Harrison v. Baltimore,* 1 Gill, 264; *Balti-*

*more v. Radecke,* 49 Md. 228. * * * We also think it equally clear that an ordinance passed under this clause to regulate the erecting of new buildings within the corporate limits, by providing that no such building shall be erected without a permit therefor first obtained from the commissioners, is not only reasonable, but useful, if not essential to the welfare and prosperity of the town. Like ordinances have been passed by the corporate authorities of other towns and cities under just such general grants of power as this, and we have found no case in which their validity has been denied. * * * This is plainly a police power, and we think it clear this ordinance was passed in the exercise of that power, and not for the purpose of raising revenue. The main purpose of the ordinance is to give the commissioners power to control the erection of new buildings, so that whenever such building either by the character of the materials out of which, or the manner in which, it is proposed to be built, its location in the town or the character of the business proposed to be carried on therein, would, in their judgment, be detrimental to the town, they may prevent its erection by refusing a permit. In each case the granting or refusal of a permit is confided to their discretion."

In *Brown v. Stubbs,* 128 Md. 129, 97 A. 227, it was held that an ordinance of Baltimore City forbidding the issuance of permits for the erection of motion picture buildings without the assent of the Mayor and City Council was a valid exercise of the police power conferred upon the city by the State. After referring to hazards incident to motion picture operations which make them a legitimate subject of regulation under the police power, the opinion said (pages 135, 136 of 128 Md., 97 A. 229): "At some locations they may be safer than at others, and there is less danger to adjoining properties in some parts of the city than in others. It would be very difficult, if not impossible, to draw a general ordinance which would accomplish all that is proper, without doing injustice to some, and we can see no reason why an applicant for a license should not be required to first get a permit from the Mayor and City Council. It is said that

that may result in one person being permitted to build, while another under similar circumstances may not be, but there ought not to be more danger of that from the Mayor and City Council than from a board or some official."

The opinion in *Brown v. Stubbs* cited the case of *Fischer v. St. Louis,* 194 U. S. 361, 24 S. Ct. 673, 48 L. Ed. 1018. In that case the question was whether a prosecution was sustainable under an ordinance providing that no dairy or cow stable should be maintained in St. Louis without a permit therefor having been obtained from the municipal assembly. In the course of its opinion holding the ordinance valid, the Supreme Court said (pages 371, 372 of 194 U. S. 24 S. Ct. 675, 48 L. Ed. 1024) : "As the dispensing power must be vested in some one, it is not easy to see why it may not properly be delegated to the municipal assembly which enacted the ordinance. Of course, cases may be imagined where the power to issue permits may be abused, and the permission accorded to social or political favorites and denied to others, who, for reasons totally disconnected with the merits of the case, are distasteful to the licensing power. No such complaint, however, is made to the practical application of the law in this case, and we are led to infer that none such exists. We have no criticism to make of the principle of granting a license to one and denying it to another, and are bound to assume that the discrimination is made in the interest of the public, and upon conditions applying to the health and comfort of the neighborhood. * * * The only alternative to the allowance of such exceptions would be to make the application of the ordinance universal. * * * It would be exceedingly difficult to make exceptions in the ordinance itself without doing injustice in individual cases; and we see no difficulty in vesting in some body of men, presumed to be acquainted with the business and its conditions, the power to grant permits in special cases."

In *Farmers' & Planters' Co. v. Salisbury,* 136 Md. 617, 111 A. 112, the suit was for an injunction against interference by the city authorities with the erection of a building to be used for the storage, mixing, and bagging of fertilizer.

The suit followed the refusal of an application for a permit to erect the building under an ordinance prohibiting the construction of any building in the city without a permit from the Mayor and Council. It was said in the opinion (pages 620, 621 of 136 Md. 111 A. 112, 113): "The legislative grant of power to the City of Salisbury was clearly, under the decisions in this state, a grant of police power, and the passage of the ordinance was an exercise of the power so granted * * *. In the present case the action of the Mayor and Council of Salisbury was in its nature discretionary, not arbitrary. There was presented to the Mayor and Council, prior to the action upon the permit, letters and petitions of those living in the vicinity of the proposed addition, both for and against the grant asked for by the appellant. These appear to have been carefully weighed, and the refusal to have been made only after careful consideration."

In *Pocomoke City v. Standard Oil Co.*, 162 Md. 368, 159 A. 902, 908, the ordinance there in question provided that no filling station should be erected on Market Street between Second and Front Streets, and that no permit should be issued for such a structure within those limits. A permit to build a filling station in the forbidden area having been applied for and refused, the applicant sued for a writ of mandamus to require the permit to be issued. In discussing the clear applicability of the police power to the regulation of gasoline filling stations, the opinion by Judge Offutt cited the cases of *Standard Oil Co. v. Minneapolis*, 163 Minn. 418, 204 N. W. 165, and *Storer v. Downey*, 215 Mass. 273, 102 N. E. 321, in which refusals of municipal legislative bodies to issue permits for filling stations, under ordinances held to have been passed in the exercise of the police power, were sustained. It was argued in the *Pocomoke City* case that the ordinance was discriminatory because gasoline stations were permitted in the vicinity of the restricted territory. Replying to that argument, Judge Offutt said: "That the very multiplication of such stations might in itself constitute a menace, and that the right to restrain the number per-

mitted to operate in a given territory within reasonable limits is a necessary incident of the police power to be exercised with a due regard both of private rights and the public welfare."

Upon principle and authority we decide that the reservation in the Zoning Ordinance of authority to the Mayor and City Council of Baltimore to determine as to the issuance of permits for filling stations in nonresidential districts is a valid provision.

It is conceded on behalf of the appellants that, according to the weight of authority, the objection to Ordinance No. 243, prohibiting the location of filling stations within three hundred feet of churches, orphanages, schools, and theaters, is not tenable. That concession is justified by the predominating effect of numerous decisions noted in 79 A. L. R. 918, under the caption of "Public regulation or authorization of gas filling stations," to which annotation the brief for the appellants refers. In *Clark v. Tower,* 104 Md. 175, 65 A. 3, the validity of statutory exclusion of the liquor business from defined areas was recognized. Enterprises having incidents which properly bring them within the purview of the police power may have a special tendency to create or increase in certain localities some of the hazards with which that power is concerned. It is readily conceivable that the establishment of filling stations in proximity to institutions where large numbers of persons assemble may materially intensify traffic and fire dangers, which in other sections might be attributable to such stations only to a negligible degree. In our judgment, therefore, Ordinance No. 243 is a valid enactment.

The principal contention, however, with respect to both of the provisions under discussion, is that, if regarded as generally valid, they are nevertheless incapable of being validly applied in restraint of the right asserted in this case under the circumstances alleged in the bill of complaint. The theory of that contention is stated in a quotation in the appellants' brief from 2 *Dillon on Municipal Corporations* (5th Ed.), sec. 591, p. 928, as follows: "When the ordinance

is within the grant of power conferred upon the municipality, the presumption is that it is reasonable, unless its unreasonable character appears from its face. But the courts will declare an ordinance to be void because unreasonable upon a state of facts being shown which makes it unreasonable. If the ordinance is not inherently unfair, unreasonable or oppresive, the person attacking it must assume the burden of affirmatively showing that as applied to him it is unreasonable, unfair and oppressive. And an ordinance general in its scope may be adjudged reasonable as applied to one state of facts and unreasonable when applied to circumstances of a different character."

The allegations upon the basis of which the appellants dispute the validity of the two ordinance provisions, as against their right to construct a filling station on their premises, are that other stations of the same kind have been authorized by the Mayor and City Council under conditions substantially similar to those surrounding the property of the appellants, and that a filling station there would not constitute a nuisance nor create a fire or traffic hazard, nor be detrimental to the public health, safety, morals, comfort, convenience, or welfare, nor disturb the comfortable, peaceful and quiet use of the church one hundred and fifty feet distant. The denial of a permit to the appellants under such circumstances is characterized by the bill as unreasonable, arbitrary, discriminatory, oppressive, and confiscatory. As the case was decided below on demurrer, it is argued that the allegations of the bill must be accepted as true for the purposes of the present decision. The statements of fact, as distinguished from the conclusions of law involved in the characterizations of the Mayor and City Council's refusal of a permit to the appellants, are simply that other applications have been granted under similar conditions and that the filling station proposed by the appellants would not create any of the perils or inconveniences which the ordinances were designed to prevent. An admission by the demurrer that the filling station desired by the appellants would not in itself be a menace to interests entitled to protection is not equivalent

to a concession that it would not be thus objectionable as an addition to existing stations of the same kind in the vicinity. The number already allowed in that locality may have reached the limit of safety. The multiplication of such stations may in itself be a menace, as we said in *Pocomoke City v. Standard Oil Co., supra.* No averment of the bill of complaint negatives the existence of conditions which might reasonably account for the refusal of a permit to the appellants on the ground suggested in that case. There is no imputation of bad faith in the rejection of the appellants' application, nor is there any allegation that the Mayor and City Council did not fully consider all the circumstances by which their decision would properly have been guided. In view of those important omissions, we think the affirmative allegations of fact are not sufficient to make the bill good as against the demurrer.

It would unduly extend this opinion to review the cases in other jurisdictions upon which the appellants relied in the argument. All of them have features which distinguish them from the present case, wherein our decision is governed by principles of which this court has heretofore repeatedly and definitely approved.

*Decree affirmed, with costs.*