GEORGE N. ZELLINGER, III ET AL. *v.* CRC DEVELOPMENT CORPORATION ET AL.

[No. 65, September Term, 1977.]

*Decided December 22, 1977.*

*Motion for reconsideration filed January 23, 1978; denied January 31, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Peter M. Levin* for appellants.

*Kenneth L. Samuelson,* with whom were *Philip Z. Altfeld, Benjamin L. Brown, City Solicitor,* and *John N. Spector, Assistant City Solicitor,* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court.

We consider in this appeal the validity of Baltimore City Ordinance 137 of 1976 (Ordinance 137), a zoning enactment authorizing the construction and operation of a housing complex for the elderly (the York Road Project) at a site on York Road in northern Baltimore City. Asserting numerous challenges under state, local and constitutional law, appellants, who own property in the vicinity of the proposed project, petitioned the Baltimore City Court for appellate review of the zoning action of appellee, the Mayor and City Council of Baltimore City (the City), in enacting Ordinance 137. At the same time, appellants brought an action in the

Circuit Court of Baltimore City to enjoin the remaining appellees, who are the owners and prospective developers of the York Road property, from proceeding with the construction of the housing project. The two cases were subsequently tried before Judge Greenfeld who upheld the Ordinance and denied the requested injunction. Appellants then noted appeals to the Court of Special Appeals, but prior to consideration of the cases by that court, we granted appellees' petition for certiorari. For reasons that follow, we affirm.

Appellants assail Ordinance 137 on myriad grounds.[1] Their principal attack is directed against sections 4.5-1d and 4.0-2c of the Zoning Ordinance of Baltimore City, Baltimore City Code, Art. 30 (Everstine ed. 1966) (the Zoning Ordinance) from which the City derived its authority to enact Ordinance 137. Appellants claim that §§ 4.5-1d and 4.0-2c are (a) *ultra vires* the State Zoning Enabling Act (the Enabling Act), Maryland Code (1957, 1970 Repl. Vol., 1977 Cum. Supp.), Art. 66B, § 2.08; (b) violative of the uniformity mandate of Art. 66B, § 2.02; and (c) repugnant to the due process and equal protection guarantees of the Federal and State Constitutions. Secondly, appellants contend that in enacting Ordinance 137, the City Council exceeded its authority under the terms of the Zoning Ordinance itself, on the theory that the power to approve so-called conditional uses, such as housing for the elderly, is vested exclusively in the Board of Municipal and Zoning Appeals (the Zoning Board). Finally, appellants argue that Ordinance 137 is invalid for the reason that in the ordination process, the City Council allegedly failed to comply with the procedures required for the passage of amendments to the Zoning Ordinance.

---

1. In pertinent part Ordinance 137, approved July 30, 1976, provides:

   "*Be it ordained by the Mayor and City Council of Baltimore,* That the Mayor and City Council of Baltimore hereby authorizes the establishment, maintenance, and operation of housing for the elderly, containing more than 100 dwelling units and exceeding a height of 40 feet, on the property generally known as 6227-6233 York Road, ... under and pursuant to the provisions of Sections 4.0-2c, 4.5-1d, and 11.0-6d of Article 30 of the Baltimore City Code (1966 Edition), title 'Zoning Ordinance of Baltimore City,' as ordained by Ordinance 1051, approved April 20, 1971, and as amended by Ordinance 1202, approved November 29, 1971."

(1)

The York Road Project is to be built on a three-acre tract located in an R-5 general residence district in Baltimore City. The proposed complex would contain 166 one-bedroom apartments in a five-story building having an overall height slightly in excess of forty feet. The project would have a lot area density of 55 dwelling units per acre.

According to § 4.5-1a of the Zoning Ordinance, uses permitted as of right in an R-5 district include multiple family detached and semidetached dwellings. Multifamily attached dwellings, however, are not permitted absent special approval from municipal authorities. Various "conditional uses" are authorized. Some of these, such as fire and police stations, swimming pools, cemeteries and day care centers, require the prior approval of the Zoning Board, § 4.5-1c, under procedures outlined in § 11.0-3c,[2] while others, including housing for the elderly and multifamily dwellings containing more than 100 units, must, under § 4.5-1d, be approved by ordinance of the Mayor and City Council, according to procedures specified in § 11.0-6d.[3]

Maximum building height restrictions for R-5 zones are prescribed by § 4.0-2c which fixes the uppermost limitation at 40 feet for multiple family dwellings. That section, however, does permit the Mayor and City Council to alter these restrictions by ordinance in specific cases.

Appellants claim that the reservation of the powers in the

---

2. Section 11.0-3c permits the Zoning Board to authorize conditional uses, after public notice and hearing, only where such uses are in harmony with the purpose and intent of the Zoning Ordinance, where the Board makes findings of fact in accordance with the standards prescribed in § 11.0-5a, and where the conditional use is not contrary to the public interest. Section 11.0-5a provides that a conditional use shall not be granted unless the Board finds it would not be detrimental to or endanger the public health, security, general welfare or morals. Some 13 additional guidelines are listed to aid the Board in evaluating individual applications.

3. Section 11.0-6d requires the City Council to give public notice and hold public hearings on the proposed conditional use. A conditional use may be authorized only by enactment of an ordinance which is in harmony with the purpose and intent of the Zoning Ordinance. The Council is further required to submit the proposed use to the Zoning Board, Planning Commission and other municipal agencies for written report and recommendation. Conditional uses for housing for the elderly must also be referred to the Department of Housing and Community Development for evaluation and recommendation.

City Council to approve conditional uses under § 4.5-1d and to alter height limitations under § 4.0-2c is void on the grounds that the power to approve special exceptions is lodged exclusively in the Zoning Board, pursuant to § 2.08 of the State Enabling Act. Article 66B, § 2.08 provides in relevant part:

"(a) The mayor with the advice and consent of the city council may provide for the appointment of a board of zoning appeals. ·

\* \* \*

"(c) The board of zoning appeals *shall* have the following powers:

"(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance." (emphasis added).

The Enabling Act defines the term "special exception" to mean:

"[A] grant of a specific use that would not be appropriate generally or without restriction and shall be based upon a finding that certain conditions governing special exceptions as detailed in the zoning ordinance exist, that the use conforms to the plan and is compatible with the existing neighborhood." Art. 66B, § 1.00.[4]

*See also Creswell v. Baltimore Aviation Serv., Inc.,* 257 Md. 712, 719, 264 A. 2d 838 (1970); Maryland Planning and Zoning

---

4. Although the appellees dispute the point, it would appear that the power to approve special exceptions embraces the power to authorize conditional uses and alter height restrictions. Cases from this state and elsewhere have indicated that "conditional use" and "special exception" are synonymous terms. Rockville Fuel v. Bd. of Appeals, 257 Md. 183, 187-88, 262 A. 2d 499 (1970); Hofmeister v. Frank Realty Co., 35 Md. App. 691, 698, 373 A. 2d 273 (1977); State ex rel. Skelly Oil Co. v. Common Coun., Delafield, 58 Wis. 2d 695, 207 N.W.2d 585, 587 (1973); 2 A. Rathkopf, *The Law of Zoning and Planning* 54-1 n.1 (3d ed. 1972). Moreover, it is evident that the power to alter building height limits is tantamount to a special exception power. *See* 3 R. Anderson, *American Law of Zoning* § 19.08 (2d ed. 1977); and *see* § 11.0-3d of the Zoning Ordinance of Baltimore City.

Law Study Commission, *Final Report — Legislative Recommendations* 18 (1969).

Despite the force of appellants' argument,[5] we are unable to address the issue here, for, as appellees correctly observe, the court below was never given the opportunity to try and decide the contention that § 2.08 of the Enabling Act deprives the Mayor and City Council of all power to approve conditional uses. Rule 885, Maryland Rules of Procedure. Appellants raise this issue for the first time in their brief on appeal, and even then they have given it only cursory treatment. A contention not raised below either in the pleadings or in the evidence and not directly passed upon by the trial court is not preserved for appellate review. *Devereux v. Berger,* 264 Md. 20, 31, 284 A. 2d 605 (1971). Furthermore, by deciding this issue, we would undermine a primary purpose of Rule 885, to prevent the trial of cases in piecemeal fashion, thereby saving time and expense and accelerating the termination of litigation. *Clayman v. Prince George's County,* 266 Md. 409, 416, 292 A. 2d 689 (1972); *Hewitt v. State,* 242 Md. 111, 113-14, 218 A. 2d 19 (1966). Resolution of this most interesting question must therefore await another day.

(2)

Appellants next contend that the City Council's reservation of power to pass on conditional uses and to alter height restrictions violates the uniformity mandate of Article 66B, § 2.02. Section 2.02 empowers the Mayor and City Council to divide the municipality into districts in order to regulate the construction and use of buildings, structures and land. It further provides that:

"All such regulations shall be uniform for each class

5. *See* State ex rel. Skelly Oil Co. v. Common Coun., Delafield, *supra,* 207 N.W.2d 585 (1973), where the Wisconsin Supreme Court struck down a local ordinance which reserved to the city council the power to approve conditional uses (filling stations). The court held that the retention of the powers was *ultra vires* the state enabling act provision, which was very much like Art. 66B, § 2.08, on the grounds that the Wisconsin act vested exclusive jurisdiction over special exceptions in the local boards of appeal. *Accord,* First Church of the Nazarene v. Weaver, 154 Ind. App. 157, 289 N.E.2d 155, 159 (1972); City of Des Moines v. Lohner, 168 N.W.2d 779, 784 (Iowa 1969).

> or kind of development throughout each district, but the regulations in one district may differ from those in other districts."

Basically, appellants' theory seems to be that the absence of specific statutory standards to guide the exercise of its reserved powers under §§ 4.5-1d and 4.0-2c imbues the City Council with virtually limitless discretion to grant special exceptions, thereby creating the potential for the City Council to wield those powers in an arbitrary, discriminatory and, hence, non-uniform manner.

This very contention was rejected by this Court over forty years ago in *Kramer v. Baltimore,* 166 Md. 324, 171 A. 70 (1934). There the Mayor and City Council of Baltimore reserved the authority to approve by ordinance the location of gasoline filling stations in any part of the city from which they had not been expressly excluded by the City's first Zoning Ordinance, Ordinance No. 1247, approved March 30, 1931. The plaintiffs, who sought to construct a service station on land owned by them, sued for a mandatory injunction to compel the city engineer to issue a permit for their property. The engineer had refused the permit on the ground that the City Council had failed to enact legislation authorizing the special use. Plaintiffs claimed that the City Council's reserved powers contravened the uniformity and comprehensiveness requirements of the Zoning Enabling Act of 1927 (Chapter 705, § 1, Laws of 1927), the precursor of present day Article 66B, §§ 2.02 and 2.03. Rejecting the plaintiffs' challenge, the Court stated:

> "These requirements of uniformity and compre-hensiveness for the regulations which the Zoning Ordinance might prescribe were not incompatible with the retention by the Mayor and City Council of the power to legislate separately with respect to the issuance of permits for filling stations in areas where, by the Zoning Ordinance, they are not definitely prohibited. The nature of that class of uses is such as to make them a proper subject of special municipal regulation. . . . In reserving that

> function for its legislative action, the city government could not be held to have exceeded its authority. The considerations affecting the comprehensive solution of such a municipal problem are clearly appropriate for the exercise of the city's legislative judgment." 166 Md. at 327-28.

We think that the rationale employed by the Court in *Kramer* is equally applicable to the matter at hand. The location of large-scale housing projects is certainly a matter upon which the local legislature might elect to exercise its legislative judgment and expertise. Appellants were unable to adduce any evidence tending to show that the City had abused its discretion, under §§ 4.5-1d and 4.0-2c, by acting inconsistently or unfairly in granting or denying other conditional use applications. Absent such a showing, we cannot say that the mere retention of the power to pass on conditional uses and height and density restrictions derogates from the uniformity mandate of § 2.02. This is especially so in light of the fact that the Council's power over conditional uses was applicable throughout all parts of each and every R-5 district in Baltimore City. *Cf. City of Baltimore v. Mano Swartz,* 268 Md. 79, 91, 299 A. 2d 828 (1973) (striking down as non-uniform, ordinance which prohibited signs in only certain parts of commercial use districts).

For similar reasons, appellants' constitutional challenge to §§ 4.5-1d and 4.0-2c is without merit. In essence, appellants urge that the reservation of the special exception power to the City Council without express standards or guidelines to control its discretion violates the Due Process and Equal Protection Clauses of the Federal and State Constitutions. Once again, appellants' argument runs headlong into a prior decision of this Court in which this precise issue was resolved contrary to their position here. In *Gino's v. Baltimore City,* 250 Md. 621, 244 A. 2d 218 (1968), the plaintiffs contested the constitutionality of Baltimore City Ordinance 938, approved July 28, 1961, which gave the City Council sole power to approve any drive-in food establishment in the First Commercial District where food and drink were consumed in automobiles stationed on the restaurant parking lot. It was

argued that the retention of this power by the local legislature was repugnant to Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution on the grounds that the City Council's authority was not circumscribed by adequate standards and safeguards. Relying heavily upon the presumption of constitutionality accorded municipal zoning enactments, we sustained the local ordinance, stating:

> "When legislative power is *delegated* to administrative officials it is constitutionally required that adequate guides and standards be established by the delegating legislative body so that the administrative officials, appointed by the executive and not elected by the people, *will not legislate,* but will find and apply facts in a particular case in accordance with the policy established by the legislative body. It seems apparent that the legislative body which establishes guides and standards for the guidance of administrative officials does not need to establish guides and standards for itself, as it is presumed to exercise the police power in a constitutional, lawful and proper way. Most certainly, it cannot be presumed by the Courts that such will not be the character of the legislative action. If it should happen, however, that the legislative action is arbitrary, unreasonable and capricious and the person injured is able to meet the burden of establishing this, the courts will give relief against this unconstitutional denial of due process of law." *Id.* at 640-41 (emphasis in original).

*See also LaRoque v. Board of Co. Commissioners,* 233 Md. 329, 336-37, 196 A. 2d 902 (1964); 3 R. Anderson, *American Law of Zoning* § 19.10 (2d ed. 1977).

Since the evidence introduced at trial was insufficient in our opinion to overcome the presumption that §§ 4.5-1d and 4.0-2c were constitutional and thus valid enactments, we are bound under the holding and reasoning in *Gino's* to uphold these sections of the Zoning Ordinance against appellants' constitutional claims.

(3)

Directing our attention to Ordinance 137 itself, appellants claim that the City was without power to enact such an ordinance under the terms of the Zoning Ordinance for the reason that the latter Ordinance is said to permit only the Zoning Board to authorize conditional uses or special exceptions. In support of their argument, appellants point first to the definition of a "conditional use" under § 13.0-2(88):

> "*Use, Conditional:* a use which may be authorized *by the Board* as a special exception under the Zoning Enabling Act and which use is subject to review and approval under the terms and procedures provided in this ordinance, together with such conditions and restrictions imposed thereon." (emphasis added).

It is suggested that conditional uses, by definition, can be approved, at least initially, by the Zoning Board alone. The City Council under appellants' interpretation is only authorized to confirm the administrative finding. Thus, say appellants, the City Council is powerless to approve a use which was not first authorized by the Zoning Board. Since, in the present case, the Zoning Board did not recommend approval of the York Road Project, appellants claim that the City Council was without authority to adopt Ordinance 137.

Appellants' interpretation, however plausible, conflicts irreconcilably with § 11.0-6d. That section expressly provides that when proposed conditional uses designated by the ordinance as requiring City Council approval are first presented, the Council must refer the proposals to the Zoning Board and other municipal departments for "written report and recommendations." The statute states in unambiguous terms that the role of the Zoning Board in connection with this class of conditional uses is strictly an advisory one. At no point does the Ordinance state that Zoning Board approval is a condition precedent to the right and power of the City Council to approve a proposed use. Rather, the obvious intent of the Ordinance is to endow the City Council with broad discretion to accept or disregard the recommendation of any

or all of the reporting municipal agencies, since the Council is ultimately responsible for promoting the intent and purpose of the Zoning Ordinance in passing on applications for designated conditional uses and petitions for relaxation of building height restrictions.

Here, both the City Planning Commission and the Department of Housing and Community Development submitted reports supporting the York Road Project; the Zoning Board alone dissented. There can be little, if any, doubt that the City Council acted within its authority under § 11.0-6d in giving its approval to the project. To the extent that the definition of "conditional use" set out in § 13.0-2(88), which is a term of general application, conflicts with the specific provisions of § 11.0-6d, the latter section must prevail. According to a well accepted tenet of statutory construction, where there is both general and specific language in the statute, the general language is controlled by the more specific. *Prince George's Co. v. Laurel,* 262 Md. 171, 182-83, 277 A. 2d 262 (1971); *Rafferty v. Comptroller,* 228 Md. 153, 158, 178 A. 2d 896 (1962).

Furthermore, appellants' reliance on § 11.0-5a is utterly misplaced. That section states that the Zoning Board may not authorize a conditional use unless the Board finds in each specific case that the proposed use comports with statutorily enumerated standards and guidelines. Suffice it to say, that § 11.0-5a, by virtue of § 11.0-3c, applies solely to conditional use applications for which the Zoning Ordinance requires approval of the Board, as opposed to that of the City Council. Where the Ordinance specifies that the conditional use must be approved by the City Council, § 11.0-6d, and not § 11.0-5a, comes into play. We conclude, therefore, that there is nothing in the language of the Zoning Ordinance to prevent the Mayor and City Council from properly reserving the power to approve certain conditional uses, including housing for the elderly, in R-5 general residence districts.

(4)

Appellants' final argument is of a highly technical nature, but like the foregoing contentions, it too must be rejected.

According to § 11.0-6c4, an ordinance which proposes an amendment to the Zoning Ordinance pertaining to specific properties, cannot be validly enacted into law on the same day that it receives a favorable vote at second reading. Final action on the ordinance must be delayed until the next session of the City Council. Since Ordinance 137 was passed without the requisite delay, appellants claim it is null and void.

The simple answer to this assertion is that Ordinance 137 is not an "ordinance which proposes an amendment" for purposes of § 11.0-6c. In promulgating Ordinance 137, the Council was merely implementing a power previously reserved to itself under §§ 4.0-2c and 4.5-1d of the Zoning Ordinance. In no way did Ordinance 137 alter, amend, supplement, restrict or affect the terms and provisions of the Zoning Ordinance as such; the text of the latter ordinance remains wholly intact. Since the special procedures of § 11.0-6c clearly did not apply to Ordinance 137, the standard procedures for the enactment of ordinances governed, as set out in Article III, § 15 of the Baltimore City Charter (1964 Revision). The Charter permits an ordinance to be passed even though the second and third readings take place on the same legislative day, if the Council so approves by a three-fourths vote. Inasmuch as these procedures were followed by the City Council in enacting Ordinance 137, we can only conclude that it was validly ordained.

For these reasons, we hold that Ordinance 137 is valid and constitutional.

> *Judgments of the Baltimore City Court and Circuit Court of Baltimore City affirmed; appellants to pay costs.*