TRULOCK v. MERTE ET UX.

1. **Nuisance:** BUILDING ON ADJOINING LOT: HOW FAR ENJOINED. Parties have the right to maintain such buildings on their own premises as they may deem necessary for their comfort and convenience; and, while the law will restrain them as to the manner in which they may use them, it will not prevent them from maintaining them for proper and lawful use. (See opinion for illustration.)

2. ———: INJUNCTION: LIMITED BY EXISTING FACTS AT TIME OF TRIAL. A court of equity will interfere by injunction to protect a right only when there is apparent danger that the right will be invaded. And where defendants were so keeping a building on their premises as to be a nuisance to plaintiff in several respects, but, after plaintiff's action to enjoin the nuisance had been begun, defendants so kept the building that it was no longer a nuisance except in one particular, and there was nothing in the evidence to indicate that they would again keep it as they did when the action was begun, *held* that the injunction should have been limited to the offense existing at the time of the hearing.

3. **Judgment:** IN CASES TAKEN UNDER ADVISEMENT: WHEN ENTERED. Section 183 of the Code does not limit the time for entering judgment, in cases taken under advisement by the judge, to the next term after that at which they are submitted.

*Appeal from Des Moines District Court.*

MONDAY, OCTOBER 10.

ACTION in equity to restrain the defendants from maintaining a private nuisance. On the final hearing judgment was entered perpetually enjoining defendants from maintaining the alleged nuisance, and they appeal.

*J. T. Illeck*, for appellant.

*T. J. Trulock*, for appellee.

REED, J.—I. Plaintiff is the owner of lot 6 in Hager-

Trulock v. Merte et ux.

man's subdivision in the city of Burlington, on which is sit-

1. NUISANCE: uated a dwelling-house and out-buildings. The
building on
adjoining lot: property is occupied by plaintiff and his family
how far en-
joined. as their place of residence. Lot 4 in the same
subdivision is owned and occupied for a like purpose by Mr.
Segun. Lot 5, which is situated between lots 4 and 6 is
owned and occupied by the defendants. The three lots are
bounded on the west by Gilbert street, which is sixty feet
wide, and on the east by an avenue forty feet in width.
Plaintiff's dwelling-house fronts on that avenue, as does
Segun's also. Defendants purchased their lot seven years
after the buildings on the adjoining lots were erected. But
when they erected their dwelling-house, they built it on the
west end of their lot, fronting on Gilbert street. They also
erected near the northeast corner of their lot a building
which, with the shed attached thereto, they used for a car-
penter shop, stable, pig-pen and privy. That building is sit-
uated about eight feet from the line of plaintiff's lot, and the
same distance from the line of the avenue. The shed attach-
ment, in which the pig-pen and privy are located, is imme-
diately opposite the windows in plaintiff's parlor, and is from
fifty to sixty feet distant from it. This action was com-
menced soon after the erection of that building, and it was
alleged in the petition, and in two amendments subsequently
filed, that defendants kept horses in said building; also that
they kept other domestic animals and fowls on their premises,
and that the plaintiff and his family were annoyed and dis-
turbed by the noises made by the animals kept in the build-
ing, and that defendants permitted large amounts of manure
and the droppings of their animals to accumulate about the
bnolding, from which noxious gases and offensive smells
arose, which permeated plaintiff's residence, and were injur-
ious to the health and comfort of himself and his family;
also that the waters which drained from defendants' premises
into the ditch on the avenue in front of plaintiff's premises

were discolored and rendered offensive by the manure and animal droppings therein.

The judgment rendered by the district court does not require defendants to remove their building, but enjoins them perpetually from allowing the accumulation on their premises of any manure or offensive offal from the animals kept by them thereon, by which the comfortable enjoyment by plaintiff of his premises will be disturbed; and from keeping any animals in their building which would cause unusual noises, to the disturbance of plaintiff and his family in the enjoyment of their home. Although plaintiff did not appeal from the judgment, he insists that it ought to be so modified by this court as to require the removal of the building; insisting that it is a nuisance *per se*. But we are of the opinion that this relief ought not to be granted. The building in its present location is perhaps not a pleasing object to plaintiff and his family, but it is not necessarily a nuisance. It does not necessarily interfere with the comfortable use or enjoyment of their home; nor is it necessarily offensive to any of the senses. True, it may be used in such manner as to become a nuisance; and so might a dwelling-house or any other building in the same location. But in such case it would be the unlawful use which would cause the nuisance. The building itself, if devoted to a lawful and proper use, would be inoffensive. Defendants have the right to maintain such buildings upon their own premises as they may deem necessary for their comfort and convenience; and, while the law will restrain them as to the manner in which they may use them, it will not prevent them from maintaining them for proper and lawful use. The case in this respect is not within the principle of *Cook v. Benson*, 62 Iowa, 170.

II. The evidence shows that, when the action was commenced, defendants owned two horses, which they stabled in the building. One of them was a restless animal, and when confined in the stable would at times strike the plank of his stall with his feet, thereby causing a good deal of noise. This often occurred

2. ———: injunction: limited by existing facts at time of trial.

in the night time, and plaintiff, and a member of his family who was sick, were greatly disturbed by the noise. They also permitted a good deal of manure to accumulate on their premises, from which an offensive smell arose. After the petition was filed, however, they caused the manure to be removed; and after that, during the pendency of the action, they kept the premises free from all accumulations of that character. They also sold the horse which created the disturbing noises; and neither plaintiff nor the members of the family had been disturbed by offensive smells from the manure, or by noises in the building, for a long time before the trial. During the pendency of the action, however, defendants kept two hogs in the shed, and it is shown that an offensive smell arose from the pen in which they were kept, which was carried into plaintiff's house.

The injunction is much broader than it should have been made. As stated above, defendants are inhibited by it from keeping upon their premises any domestic animals which would cause unusual noises, whereby plaintiff would be disturbed in the enjoyment of his home. They were also forbidden to allow the accumulation on their premises of any manure or offensive offal, which would have the effect to interfere with the comfortable or convenient use by plaintiff of his premises. That plaintiff is entitled to be protected from the annoyances forbidden by the injunction is certainly true. But a court of equity will interfere by injunction to protect a right, only when there is apparent danger that the right will be invaded. The court will issue its mandate forbidding the doing of a particular act, only when it is shown that the party is about to do that act. And we do not find in the record any evidence of an intention by defendants to keep upon their premises animals of the kind prohibited by the injunction; or to permit the accumulation there of the materials prohibited. The defendants, however, were keeping their hogs in the pen at the time of the trial. The evidence shows that they kept the pen as clean as was possible,

yet offensive smells arose from it, which penetrated plaintiff's house. The pen, when used for that purpose, would necessarily be a nuisance, and plaintiff is entitled to have it abated. The injunction will be so modified as to forbid defendant from keeping hogs in or about the building. In other respects the order will be vacated.

III. The cause was tried and submitted at the June term, 1884, and by consent of parties was taken under advisement by the judge. He did not, however, decide the case until the November term, 1886. The defendants objected to the entry of any judgment at that time, and they now contend that the court had no power to enter judgment in the cause after the term next after that at which it is submitted. Counsel relied on Code, § 183, in support of that position. The section is as follows: "With consent of parties, actions, special proceedings, and other matters pending in the courts named in this chapter, may be taken under advisement by the judges, decided, and entered of record in vacation or at the next term." We think this section does not prevent the determination of a cause which has been taken under advisement, and the entry of judgment, at a later time than that next following its submission. When the cause has been submitted, the parties have the right to have it determined; and if, from any cause, the judge is not able to determine it in vacation, or at the next term, that right continues until the cause is determined. Cases might arise, doubtless, in which the parties would have the right to have the submission set aside, and the cause resubmitted, because of the delay in determining it. But nothing of that kind was claimed in this case.

3. JUDGMENT: in cases taken under advisement: when entered.

The judgment will be

MODIFIED AND AFFIRMED.