Commissioners of Easton *vs.* Covey.

(Decided 16th June, 1891.)

THE COMMISSIONERS OF EASTON *vs.* LUTHÈR W.
COVEY.

*Municipal Corporations—Construction of sec. 52 of Art.
21 of the Code of Public Local Laws, giving General
powers to the Commissioners of Easton—Power of the
Commissioners thereunder—Ordinance to Regulate the
Erection of New Buildings—Permits—Mandamus.*

Under a power conferred by sec. 52 of Art. 21 of the Code of
Public Local Laws, upon the commissioners of the town of
Easton, a body politic, to make "such ordinances as they may
deem necessary and beneficial to said town," the commissioners
may pass any ordinance which they may deem necessary and
beneficial, and it will be valid, provided it be reasonable and
consonant with the general powers and purposes of the corpora-
tion, and not inconsistent with the laws and policy of the State.

There is nothing in the subsequent special grants of power, such
as to cause nuisances to be abated, and all obstructions in the
streets, lanes and alleys to be removed, to cause the streets, lanes
and alleys to be straightened and widened, and other like special
powers, manifesting an intent thereby to limit or qualify the
legitimate operation of the general clause.

Commissioners of Easton *vs.* Covey.

An ordinance passed under this clause, to regulate the erecting of new buildings within the corporate limits, by providing that no such building shall be erected without a permit therefor first obtained from the commissioners, and imposing a fine for violation of the provisions of the ordinance, is not only reasonable, but useful, if not essential to the welfare and prosperity of the town, and is within the scope of the powers granted by the Legislature.

The fact that the ordinance requires the sum of one dollar to be paid for each and every such permit, the same to be applied to general expenses of the town, does not show that it was the purpose of the commissioners in passing the ordinance to raise revenue. It was passed in the exercise of the police power.

Under such ordinance the commissioners have a discretion to grant or refuse a permit in each case, of an application therefor, and have also the power to enforce the ordinance; and *mandamus* will not lie to compel them to grant the permit.

APPEAL from the Circuit Court for Talbot County.

The case is stated in the opinion of the Court.

The cause was submitted on brief, to ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, MCSHERRY, and BRISCOE, J.

*William R. Martin,* for the appellant.

*Charles S. Carrington,* and *Charles H. Gibson,* for the appellee.

The powers conferred on the Commissioners are extensive, but are confined within well defined limits; and power to pass ordinances, or otherwise "to regulate the erection of new buildings in the town of Easton" is not among them.

They are given very extensive powers of taxation. Power to abate nuisances, to preserve the peace, to widen and improve the streets; and they have power to enact

and enforce ordinances relating to these subjects and the other classes of subjects embraced in the several Acts of Assembly relating to dogs, hogs, market, wood, hay, &c. *Public Local Laws*, 1888, *title "Talbot County," secs.* 41 *to* 97.

But even if the Commissioners had authority to pass the ordinance in question, they had no right to refuse to issue the permit to the appellee when he made his application and tendered them one dollar.

An examination of the ordinance itself discloses nothing of discretion. It enacts that "It shall not be lawful for any person ' *   *   to erect or build any dwelling house, barn, shed, stable, storehouse, warehouse or shop within the limits of this town, or any porch on any part of the sidewalks, without first obtaining a permit from the Commissioners of the town, through their clerk, to erect the same, for which the sum of one dollar shall be paid,  *   *   *   the same to be applied to the general expenses of the town."

The ordinance itself, so far from supporting the contention that it confers discretion, directly contradicts it in the provision that the permit shall be issued *"through their clerk."* If it were the intention that discretion should be exercised, this provision would be unlawful, for the Commissioners have no power to delegate their discretionary powers. 1 *Dillon on Municipal Corporations, sec.* 96.

The power to exercise discretion is analogous to the power to frame ordinances; both are derived from the same source, viz., the Legislature, and the Courts have the same power to declare that discretion has been abused or improperly exercised as they have to declare ordinances invalid. 1 *Dillon on Mun. Corpo., sec.* 94, *and from sec.* 832 *to* 837, *and note* 4 *to sec.* 311; *Mayor, &c. of Balto. vs. Radecke,* 49 *Md.,* 217.

A livery stable is not, *per se,* a nuisance; it depends on its location and the manner in which it is built, kept and

Commissioners of Easton *vs.* Covey.

used. 13 *American and English Encyclopædia of Law,* title *Livery Stable*, 935.

Can It be contended that it rests solely within the discretion of. the Commissioners, whether any person whatsoever shall "erect or build any dwelling-house, storehouse, or warehouse, or shop within the limits of this town?" If I own a lot, and desire to build myself a dwelling, is it competent for the Commissioners to refuse me permission to build because their "judgment requires them to refuse," and this without assigning a single reason?

The ordinance does not profess to *regulate* the erection of buildings, or to lay down general rules governing their construction, or to prescribe limits within which any given business can be conducted. But the construction sought to be placed upon it by the defendants "would commit to the unrestrained will of the Commissioners the power to say whether or not any building, of any character whatsoever, should hereafter be erected in the town of Easton." It "lays down no rules by which its impartial execution can be secured, or partiality and oppression prevented." Such a construction would make the ordinance one which in the language of Mr. Justice MILLER, hardly falls within the "domain of law." *Mayor, &c. of Balto. vs. Radecke,* 49 *Md.*, 230.

MILLER, J., delivered the opinion of the Court.

Covey, the appellee, applied to the Commissioners of Easton under an ordinance passed by them, for a *permit* to erect a *frame stable* on his lot on Harrison street in that town, in addition to the livery stable which he then had thereon, and tendered the sum of one dollar which the ordinance prescribed for every *permit granted.* The Commissioners refused to grant the permit. He then applied to the Circuit Court for a *mandamus* to compel

them to so do. The Commissioners in their answer say in substance, that under the ordinance referred to, no person has the right to erect any building in that town without a permit from them, and they have the *discretion* to grant or refuse a permit in any given case; that while they have no desire or intention to embarrass the petitioner in the prosecution of his business, yet in their judgment a due regard to the *safety of property and the best interests of the town*, require them to refuse this permit, and they have accordingly after due consideration refused it. The case was heard upon petition and answer, and the Court ordered a peremptory *mandamus* to issue. From that order the Commissioners have taken this appeal.

The questions presented are: 1st, has the Legislature granted to the appellants the power to pass an ordinance requiring permits for the erection of buildings in the town of Easton? 2nd. Does the ordinance which they have passed on the subject, vest them with the *discretion* to grant or refuse permits in any given case? Upon neither of these questions do we entertain any doubt.

The inhabitants of Easton were incorporated by the Legislature as a body politic by the name of "The Commissioners of Easton," and first among the powers granted to the Commissioners was that of making such "*ordinances as they may deem necessary and beneficial to said town.*" *Code, Public Local Laws, Art.* 21, *sec.* 52. Under this power they passed an ordinance entitled an ordinance "to *regulate* the erecting of new buildings within the limits of Easton." This ordinance provides that "it shall not be lawful for any person or persons to erect or build any dwelling-house, barn, shed, stable, storehouse, warehouse or shop, within the limits of this town, or any porch on any part of the sidewalks, without first obtaining a permit from the Commissioners of the town through their clerk, to erect the same, for which the

Commissioners of Easton *vs.* Covey.

sum of one dollar shall be paid for each and every permit *so granted*, the same to be applied to the general expenses of the town, and any person or persons who shall violate the provisions of this ordinance, shall, upon conviction thereof before a justice of the peace, be fined five dollars for each and every day from the date the building is commenced." We think it very clear that under a general power to pass such ordinances as the Commissioners may deem necessary and beneficial to the town, the Commissioners may pass any ordinance which *they may judge* necessary and beneficial, and it will be valid provided it be *reasonable* and consonant with the general powers and purposes of the corporation, and not inconsistent with the laws and policy of the State. 1 *Dillon Mun. Corp.*, secs. 316, 319; *Harrison vs. Mayor and C. C. of Balto.*, 1 *Gill*, 264; *Mayor, &c. of Balto. vs. Radecke*, 49 *Md.*, 228. We find nothing in the subsequent special grants of power such as to cause nuisances to be abated, and all obstructions in the streets, lanes and alleys to be removed, to cause the streets, lanes and alleys to be straightened and widened, and other like special powers, manifesting an intent thereby to limit or qualify the legitimate operation of the general clause. We also think it equally clear, that an ordinance passed under this clause to *regulate* the erecting of *new buildings* within the corporate limits, by providing that no such building shall be erected without a *permit* therefor, first obtained from the Commissioners, is not only *reasonable*, but useful, if not essential to the welfare and prosperity of the town. Like ordinances have been passed by the corporate authorities of other towns and cities under just such general grants of power as this, and we have found no case in which their validity has been denied. The ordinance which was declared unreasonable and void in *Radecke's Case*, was one which gave to the Mayor the unrestrained and absolute power at his own mere will and

pleasure to *revoke* any and every *permit* which had *already been granted* for the use of steam engines and boilers, in the City of Baltimore, but at the same time the Court was careful to say that in deciding *that ordinance* to be void, they were not to be understood as expressing any disapproval of a previous one which required a *permit* for the *erection* of every such engine within the city limits.

Nor can we adopt the argument of counsel for the appellant that this is a *revenue* ordinance and not a police regulation. No doubt an ordinance'which on·its face appears to be an effort to raise revenue under the guise of exercising the police power, is void unless there be an express grant of power to raise revenue in that way. *Vansant vs. Harlem Stage Co. of Baltimore City;* 59 *Md.*, 330; *State vs. Rowe,* 72 *Md.*, 548. But we cannot regard this as an ordinance of that character. Its preamble declares it to be an ordinance " to *regulate* the erecting of *new buildings,*" and it makes it *unlawful* for any such building to be thereafter erected without a permit therefor from the Commissioners through their clerk. For each permit granted the sum of one dollar is to be paid, which is to be applied to the general expenses of the town, and the grant of power by the Legislature to the Commissioners, is that " they may make such ordinances as *they may deem necessary* and *beneficial* to the town." This is plainly a police power, and we think it clear, this ordinance was passed in the exercise of *that power,* and not for the purpose of raising revenue. The main purpose of the ordinance is to give the Commissioners power to *control* the erection of *new buildings,* so that whenever such building, either by the character of the materials out of which, or the manner in which, it is proposed to be built, its location in the town, or the character of the business proposed to be carried on therein, would in their judgment be *detrimental* to the

town, they may prevent its erection by refusing a permit. In each case the granting or refusal of a permit is confided to their *discretion.* The fact that the small fee of one dollar is exacted for permits granted, is a mere incident to the main purpose of the ordinance, intended as a means for carrying the ordinance into effect, though incidentally, the treasury of the town may be thereby benefited. *Vansant's Case,* 59 *Md.,* 335. The exaction of this small fee does not show that it was the purpose of the Commissioners in passing this ordinance *to raise revenue.*

We are therefore of opinion the Legislature has granted the power to pass this ordinance; that it is not unreasonable; that under it the Commissioners have a *discretion* to grant or refuse a *permit* in each case of an application therefor, and have also the power to enforce the ordinance. For these reasons the order granting the *mandamus* must be reversed. In so deciding we do not, in our judgment, interfere with the well settled rule that it is the plain duty of the Courts to see that corporate authorities do not transgress the authority delegated to them.

*Order reversed.*

