GREEN ET AL. *v.* GARRETT ET AL.

[No. 186, October Term, 1948.]

*Decided May 20, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Wilmer H. Driver* for appellants.

*Thomas N. Biddison, City Solicitor of Baltimore,* with whom were *Edwin Harlan* and *John J. Ghinger, Jr., Assistant City Solicitors,* on the brief, for Department of Recreation and Parks of Baltimore City.

*J. Kemp Bartlett, Jr.,* with whom was *Robert D. Bartlett* on the brief, for Baltimore Baseball & Exhibit Co.

Submitted on brief by *J. Nicholas Shriver, Jr.,* and *Cross & Shriver,* for International League Professional Baseball Clubs.

MARBURY, C. J., delivered the opinion of the Court.

This second appeal is taken by the appellants in the case heard as No. 58 of this Term, decided on January 13, 1949 and reported by the same title in 192 Md. 52, 63 A. 2d 326. The purpose of the second appeal is to have this court determine whether the decree passed by the Chancellor, following our decision in the first appeal, is in accordance with our opinion in that appeal. The appellants contend it is not, in two respects, the first having to do with lights and the second with parking facilities.

It is not necessary to repeat the facts stated in the first opinion. It will be sufficient for an understanding of what we are about to determine, to say that this is an action brought by citizens and taxpayers of Baltimore against the Department of Recreation and Parks of Baltimore City and the Baltimore Baseball and Exhibition Company to prevent the use of the Baltimore Stadium for the playing of professional baseball, and to enjoin the respondents from certain parking and lighting operations there. We held that the stadium could be used for professional baseball, but placed restrictions on the method of lighting and on the use of the unpaved parking lots. The Chancellor attempted to embody these restrictions in his decree, and the question before us is whether he did so correctly.

As to the lights, we found that those on the top of the stadium were tilted in such a manner as to shine

directly across the stadium into the windows of nearby residents. We also stated that for the playing of night baseball it was necessary to illuminate the playing field. We did not require the light thus produced to be confined to the field alone, but said that in order to provide proper light for the games, it was not necessary to project blinding lights into peoples' homes. We did not, of course, intend to prohibit the lighting of the area, adjacent to the stadium, used for parking, or the lighting of the entrances. Such lighting would be an obvious precaution against accidents, and a necessity for proper policing. Nor did we suggest that the lights on the top of the Stadium should be so adjusted as to confine their illumination to the field. It is doubtful whether this could be so completely confined, but, in any event, that was not what we decided. What we were concerned with was to prevent these lights (or other lights, if there were any) from shining directly into adjacent residences. We used the word "blinding", because that was a description of these lights given by one of the witnesses, but we did not intend that word to be taken as narrowly as the appellants contend it may be construed. Their objection to the decree, in this respect, is that the Chancellor used that word to describe the only kind of lights which the respondents were enjoined from projecting into the windows of their homes and into nearby residences. We do not think the Chancellor intended to restrict his prohibition so literally. The claim made by appellants is that lights may shine directly into their homes, and cause the annoyance complained of in the bill of complaint, without being actually "blinding", and they fear that, if this does happen, they will not be able to institute contempt or other proceedings under the decree passed. We think this fear is groundless. A complete reading of our opinion will indicate that it was the *direct* projection of the beams into the neighboring homes that we were prohibiting. We so read the Chancellor's decree. It prohibits, as we construe it, the use of any light upon the Stadium which

is so constructed as to shine directly into nearby residences, and it is not confined to a prohibition of those lights only which may be literally described as "blinding". So construed, we think the decree is in accord with our opinion.

We found that the unpaved parking lots adjacent to the Stadium produced the dust complained of, and that this circumstance caused congestion elsewhere, because those attending the games parked their cars in driveways and entrances in order to avoid the use of a dirt field. We concluded that these annoyances could be largely avoided if a sufficiently large paved parking place were provided. We directed that the appellees should be enjoined from using the parking places until such paving was done, and that provision for it should be included in any contract between the appellees for the use of the Stadium. The Chancellor followed our instructions in his decree, but the appellants contend that the use of the Stadium itself should be prohibited until the paving is completed, and urge that the decree should direct that the paving should be done at once. It is implicit in the opinion and, we think, in the decree, that the paving should be done promptly, and not at some vague time in the future. Opinions and decrees are rendered in actual cases before the courts, and the remedies ordered are not intended to be delayed. We did not go to the extent of prohibiting the use of the Stadium until the paving was done, but we showed, by a citation of authorities, how far the courts in other jurisdictions have gone in the way of prohibiting lawful occupations which produced nuisances. It should not require much interpretation to find that we intended the conditions we indicated should be remedied without delay. We assumed, as we had a right to assume, that the City and the Baseball Club would obey our instructions, and we did not think it either necessary or proper to threaten them with further consequences. The Chancellor's decree should not be construed as providing a loophole for escape from

prompt action, and we have no idea that he would so construe it, if occasion arose.

During the oral argument of this case it was stated by counsel for the appellees that the decree had already been substantially obeyed. The appellants did not agree with this statement. That question is not before us on this appeal, and we hope it will not be before us on any future appeal. It should be a simple matter to do what is ordered to be done, and equally easy to find out whether it has been done, but there is now nothing before us on this aspect of the controversy. We are passing only upon the question whether the decree carries out substantially our instructions. We think it does.

*Decree affirmed with costs.*