FELDSTEIN *v.* KAMMAUF ET AL.

[No. 127, October Term, 1955.]

480

*Decided April 6, 1956.*

*Motion for rehearing filed April 30, 1956, denied May 2, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William A. Gunter* and *William J. Gunter,* with whom was *F. Brooke Whiting* on the brief, for the appellant.

*W. Earle Cobey* for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Allegany County directing the conduct of a scrap metal or junk yard.

On June 14, 1955, the appellees, residents of LaVale, a suburb of the City of Cumberland, Allegany County, filed a supplemental bill of complaint asking that the respondent, appellant, Abraham Feldstein, be enjoined, restrained and prohibited from operating and maintaining a junk yard on premises owned by him and his sister, Anna Feldstein, in LaVale, and for other and further relief. After a hearing in open court the chancellor decreed: (1) that the appellant reduce and conceal from the view of all the residents of nearby property the amount of scrap and other materials deposited on his and his sister's property; (2) that he not handle any material on said property whether by way of storage, removal, or reducing to smaller pieces between the hours of 9 P. M. and 7 A. M.; (3) that he not burn thereon anything so as to cause offensive smoke, fumes, or soot; (4) that he not block, or allow his customers to block, the county road leading to said property; (5) that he not allow rats or mice to congregate on said property; (6) that in the event he does not conceal the scrap and other materials, as aforesaid, he shall remove the same from said premises. From that decree the appellant appeals.

In this Court the appellant does not contest and is willing to abide by all of said decree except sections 1 and 6 aforesaid. He contends that he should not be required to conceal the scrap and other materials on his premises or to remove the same from the premises, which would result in the discontinuance of his business.

The testimony taken in open court before the chancellor reveals the following facts. There is no zoning in Allegany County and no restrictions in the deeds as to the use of the property in question here. LaVale is a suburb of the City of Cumberland and extends along the National Highway from a point about two miles west

of Cumberland, a distance of about five miles to a mountain range. It lies along the National Highway, U. S. Route 40. It is traversed by a single track railroad and a small stream known as Braddock's Run. On account of the decline of coal mining in Allegany County the railroad line has recently been removed and scrapped west of the Feldstein property.

Prior to prohibition the James Clark Distillery was located in LaVale next to the National Highway. A glass works is now located in one of the old distillery properties. Immediately east of this property is a meadow which is referred to as "the bottom". Rye Street extends along the west side of "the bottom", and across the railroad into a residential area known as Braddock's Farms where there are no commercial properties but several residences. Between the National Highway and appellant's property are the homes of the Taylors, the Deals and the Kammaufs, complainants here, and the LaVale Fire Station, which is also used as a community hall and barber shop. An old distillery warehouse is located a short distance east of the Fire Station, which houses a completely enclosed body repair shop. South of the National Highway is a residential area except for a motel. In the neighborhood are commercial and business properties. A gasoline service station, under which there is a bulk plant, is situated west of two glass plants. A roofing company warehouse is located east of Rye Street and away from the National Highway. A flour packing warehouse is being built. There are also two stores and a postoffice some distance east of appellant's property. The remaining area is residential.

In 1939 Mr. Feldstein, the appellant, purchased a part of this bottom land which ran approximately 350 feet along U. S. Route 40 and which varied in depth from 150 feet to 450 feet. The Western Maryland Railroad crossed this property from east to west on a sixty-six foot right of way. Sewer lines ran from some of the residential properties under appellant's land to an open ditch. At the time of appellant's purchase the property

was improved by a large warehouse which had formerly been used for the storage of whiskey by Clark's Distillery. The original complainants in this case, before they were joined in the supplemental bill by other neighbors in the vicinity, were Mr. and Mrs. Kammauf and Mr. and Mrs. Barb, who purchased their properties in 1947. At that time there was some junk stored on appellant's land. Many of the homes of the other complainants were built between 1946 and 1954. As soon as the appellant purchased the property in 1939 he started storing scrap metal, tanks and junk, and has made continuous use of this land for storage of junk and scrap which he hauled to and from the property by railroad cars and trailers. The appellees claim that before 1954 this material was largely concealed by vegetation.

In 1954 Mr. Feldstein purchased, for over $100,000.00, the rails of the Western Maryland Railroad right of way. Needing more storage space, in May, 1954, he purchased in his sister's name the tract of land immediately south of and adjacent to his own which is referred to as "the bottom". The two parcels, now owned by him and his sister and used by him, approximate seven acres, the total cost of which was $13,000.00. In 1954 appellant began storing the railroad rails on these properties. Mr. Malone, freight agent of the railroad, stated that some shipments of scrap were made to the property between 1939 and 1946. In 1946 six carloads of scrap were either moved into or from appellant's property. He stated that from 1946 to 1954 no shipments were made by rail to and from appellant's property.

The appellees claim that after the purchase of the additional property in 1954 storage began on a large scale. Junk and scrap metal were brought in and loaded and unloaded from and into railroad cars and trucks. A large metal ball was used to shatter the metal by dropping it from a height of fifteen feet. Insulation was burned off wires. The yard contained barrels, rails, copper wiring, metal discs, drums and tanks. The appellees complain of the noise, the rats, the smoke, and

the blocking of the roads, the injunction against which is not contested by the appellant.

As the appellant does not contest any part of the decree other than the concealing of the scrap and other metals on the premises, and, as this contested part of the decree, if affirmed, will compel the appellant to discontinue his present business there, we will only consider whether he should be required to abide by the contested part of the decree on account of the unsightliness of his business.

The appellees rely on the case of *Meadowbrook Swimming Club, Inc. v. Albert*, 173 Md. 641, 197 A. 146, where an injunction was issued against a noise nuisance coming from a large swimming pool. The appellant here does not question that part of the decree which requires him to avoid the night noises. This Court said in that case, which is pertinent here: "The rule which must control is whether the nuisance complained of will or does produce such a condition of things as in the judgment of reasonable men is naturally productive of actual physical discomfort to persons of ordinary sensibilities, tastes, and habits, such as in view of the circumstances of the case is unreasonable and in derogation of the rights of the party (*Hamilton Corp. v. Julian*, 130 Md. 597, 101 A. 558; *Woodyear v. Schaefer*, 57 Md. 1, 12) subject to the qualification that it is not every inconvenience that will call forth the restraining power of a court. The injury must be of such a character as to diminish materially the value of the property as a dwelling and seriously interfere with the ordinary comfort and enjoyment of it. *Adams v. Michael*, 38 Md. 123; *Gallagher v. Flury*, 99 Md. 181, 182, 57 A. 672; *Euler v. Sullivan*, 75 Md. 616, 618, 23 A. 845." See also *Hart v. Wagner*, 184 Md. 40, 40 A. 2d 47.

The appellees rely strongly on the case of *Fox v. Ewers*, 195 Md. 650, 75 A. 2d 357. There, the defendant's property had been used for a blacksmith shop previous to 1939. After that time building equipment was placed on the lot and in 1947 the defendant had

seven asphalt distributors there which created pungent, gaseous, and nauseous odors. Much noise was made by the large tractors which disturbed the peace of the complainants' homes and which made complainants' lives very disagreeable. In affirming the granting of an injunction by the chancellor against the storing of asphalt equipment and trucks on the property and the causing of odors, fumes and noises, apparently the unpleasant sight of this equipment was not considered.

Great reliance is placed by the appellees on the case of *Parkersburg Builders Material Co. v. Barrack,* 118 W. Va. 608, 191 S. E. 368, 192 S. E. 291, 110 A. L. R. 1454. There, the owners of property in the vicinity brought a suit to enjoin the defendant from using his ground for outdoor storage and wreckage of abandoned automobiles. The defendant had parked about one hundred and twenty old automobiles on the lot and it was his intention to place more there. The chancellor enjoined the defendant from using his property as a storage yard for old automobiles, and from dismantling automobiles thereon exceɒt within an enclosed structure. On appeal the West Virginia Supreme Court of Appeals found that there were a few residences close by and several business establishments in several city blocks in the section of the city under consideration. The residential properties amounted to ninety-six percentum of all the properties involved. This result was attained by including numerous properties not in the immediate vicinity. The majority opinion, in finding that the section where this yard was located was not clearly a residential community and that the injunction should be dissolved, quoted as *dicta* with approval the following from *State ex rel. Carter v. Harper,* 182 Wis. 148, 196 N. W. 451, 455, 33 A. L. R. 269: "It seems to us that aesthetic considerations are relative in their nature. With the passing of time, social standards conform to new ideals. As a race, our sensibilities are becoming more refined, and that which formerly did not offend cannot now be endured. That which the common law did not condemn as a nuisance is now frequently

outlawed as such by the written law. This is not because the subject outlawed is of a different nature, but because our sensibilities have become more refined and our ideals more exacting. Nauseous smells have always come under the ban of the law, but ugly sights and discordant surroundings may be just as distressing to keener sensibilities. The rights of property should not be sacrificed to the pleasure of an ultra-aesthetic taste. But whether they should be permitted to plague the average or dominant human sensibilities well may be pondered." The majority opinion also stated: "An automobile junk yard is not necessarily an objectionable place. The business of buying old automobiles, wrecking them and selling serviceable parts as such and junking the residue is an honorable and useful business. But an outdoor layout of a business of that kind necessarily is not pleasing to the view. Such business, therefore, should not be located in a community of unquestioned residential character." President Judge Kenna of that Court in a concurring opinion, while agreeing with the majority opinion, disagreed with the *dicta* as to the power of an equity court to enjoin the use of property on purely aesthetic grounds. He wrote: "Although I do not know of any case that has sustained such an exercise of the police power on the ground that aesthetic considerations by themselves justify the exercise of that power, the unmistakable trend is to sustain the exercise of that power in zoning and the like as being promotive of the public health and safety and in furtherance of the general welfare of the community. *Metzenbaum on the Law of Zoning*, p. 99, par. D. There is to my mind a clear and most decided difference between direct control by the courts through the process of injunction on the one hand, and the control exercised by the legislative branch through the use of the police power on the other. * * * There can be no doubt that it is a vast extension of the former powers of the courts to say that a court of equity may enjoin as a nuisance the continuation of a thing because it is unsightly. So far as I have been able

by an exhaustive search to discover, no judicial decision in either England or America has ever so held."

In *Yeager v. Traylor*, 306 Pa. 530, 160 A. 108, the court enjoined the proposed construction of an open air parking place with unenclosed floor and roof for use of hotel patrons and apartment house tenants in a strictly residential district. In *Perlmutter v. Greene*, 259 N. Y. 327, 182 N. E. 5, 81 A. L. R. 1543, Chief Judge Pound, in holding that the superintendent of public works was justified in erecting a screen to shut off the view of a large advertising sign, erected by lessees of property near an approach to a bridge, and at a dangerous curve on a public highway where such a sign might divert motorists' attention, said: "Beauty may not be queen, but she is not an outcast beyond the pale of protection or respect. She may at least shelter herself under the wing of safety, morality, or decency. It is, however, needless for the decision of the case to delimit her sphere of influence." See also *Bermann v. Parker*, 348 U. S. 26, 75 S. Ct. 98, 99 L. Ed. 27; *State v. Wieland*, (Wis., 1955), 69 N. W. 2d 217.

The appellees here admit that a junk yard is not a nuisance *per se*. *State v. Shapiro*, 131 Md. 168, 101 A. 703; *Landay v. Board of Zoning Appeals*, 173 Md. 460, 196 A. 293.

In *Cochran v. Preston*, 108 Md. 220, 70 A. 113, the right of the Legislature to pass an act prohibiting the erection of any building, except churches, to exceed the height of seventy feet above the surface of the street in the neighborhood of the Washington Monument in Baltimore, was contested. In holding that the Legislature was competent to pass the act, in the exercise of the police power based not alone on aesthetic grounds, the Court quoted the following: "Regulations which are designed only to enforce upon the people the legislative conception of artistic beauty and symmetry, will not be sustained, however much such regulations may be needed for the artistic education of the people." In *Byrne v. Maryland Realty Co.*, 129 Md. 202, 98 A. 547,

in holding that an act prohibiting the building of dwelling houses within certain limits of Baltimore City, unless of brick, semi-detached, and at least ten feet apart, or if of frame, twenty feet apart, was unconstitutional, this Court quoted the following from *Sinking Fund Cases,* 99 U. S. 700: "The courts of this country have with great unanimity held that the police power cannot interfere with private property rights for purely esthetic purposes." Compare *Maryland Advertising Co. v. City of Baltimore,* 199 Md. 214, 86 A. 2d 169.

In *Livingston v. Davis,* 243 Iowa 21, 50 N. W. 2d 592, 27 A. L. R. 2d 1237, the trial judge below required the defendant under a zoning ordinance to lower to not more than forty inches and otherwise rebuild a six foot wooden fence which had been built around the playground of a private school. The Supreme Court of Iowa, in reversing the trial judge on that part of his decree, said: "Further, that a thing is unsightly or offends the aesthetic sense does not ordinarily make it a nuisance or afford grounds of injunctive relief. Parkersburg Builders Material Co. v. Barrack, 118 W. Va. 608, 191 S. E. 368, 192 S. E. 291, 110 A. L. R. 1454, 1460, and citations; 39 *Am. Jur.,* Nuisances, section 29, 66 *C. J. S.,* Nuisances, Sec. 111b, p. 873." In *Haehlen v. Wilson,* 11 Cal. App. 2d 437, 54 P. 2d 62, the plaintiffs sought removal of a six and one-half foot wooden fence built within three inches of the boundary line of their property on the grounds that the fence was injurious to health and was indecent or offensive to senses or an obstruction to the free use of their property. The Court there held that in the absence of some legislative action the courts could not set up aesthetic standards.

In *Francisco v. Dept. of Institutions & Agencies,* 13 N. J. Misc. 663, 180 A. 843, the following was quoted from *Demarest v. Hardham,* 34 N. J. Eq. 469: "Things merely disagreeable, which simply displease the eye, or offend the taste, or shock an over-sensitive or fastidious nature, no matter how irritating or unpleasant, are not nuisances. " In *Murphy v. Town of Westport,* 131 Conn.

292, 40 A. 2d 177, the right of the town to pass a zoning ordinance forbidding the erection of a billboard in a business zone was contested. There, the Chief Justice of the Supreme Court of Errors of Connecticut reviewed many cases and concluded that the weight of authority was to the effect that, where aesthetic considerations afford the sole ground for the enactment of laws or ordinances affecting the individual use of land, they were void. However, the fact that aesthetic considerations play a part in the adoption of such an ordinance does not affect its validity.

In *In Re Opinion of the Justices*, 234 Mass. 597, 127 N. E. 525, it was said by the Supreme Judicial Court of Massachusetts: "It has been decided quite generally, if not universally, by courts in which the question has been raised, that aesthetic considerations alone or as the main end do not afford sufficient foundation for imposing limitations upon the use of property under the police power." For other cases holding that an injunction or action will not lie for mere unsightliness see *Trulock v. Merte*, 72 Iowa 510, 34 N. W. 307, (involving a stable); *Woodstock Burial Grounds v. Hager*, 68 Vt. 488, 35 A. 431, (involving a graveyard); *Whitmore v. Brown*, 102 Me. 47, 65 A. 516, (involving an unsightly wharf); *Houston Gas & Fuel Co. v. Harlow*, Tex. Cir. App. 1927, 297 S. W. 570, (involving a gas holder); and *Shepler v. Kansas Milling Co.*, 128 Kan. 554, 278 P. 757, (involving a grain storage tank).

In the instant case, the appellees, when they bought or constructed their homes, knew or should have known that there was a junk yard in the vicinity and that there were no zoning regulations. They could have found that there were no restrictions against appellant's property. As the appellant does not contest the other parts of the decree, to affirm it as a whole would in effect put appellant out of a lawful business. This yard is not located in a clearly residential community. There are other commercial establishments in the vicinity in the view of the appellees. Under the circumstances of this

case it is unnecessary to decide whether the equity court lacks all power to enjoin for aesthetic considerations alone. We think the evidence in this case does not establish such a nuisance as to justify Sections 1 and 6 of the decree as hereinbefore set out, and that those sections should be stricken. The decree will therefore be affirmed as to its uncontested part, and remanded as to the contested part for the passage of a decree leaving out Sections 1 and 6, aforesaid. *Green v. Garrett,* 192 Md. 52, 63 A. 2d 326, 193 Md. 260, 66 A. 2d 412.

> *Decree affirmed in part and reversed in part and cause remanded, each side to pay its own costs.*

BRUNE, C. J., dissents in part.