MAYOR AND COUNCIL, TOWN OF BLADENS-
BURG, INC. *v.* BERG, TRADING AS BERG
BROTHERS COMPANY

[No. 185, September Term, 1957.]

*Decided March 26, 1958.*
*Concurring opinion filed April 18, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, PRESCOTT and HORNEY, JJ., and CARTER, Chief Judge•
of the Second Judicial Circuit, specially assigned.

*John B. Kenkel* and *John B. Wright,* for appellant.

*Louis Silberstein,* with whom were *Ginsberg & Ginsberg*
and *John S. White* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal by the Town of Bladensburg (Town), a
municipal corporation, from the judgment and order of the
Circuit Court for Prince George's County directing that a
writ of *mandamus* issue to compel the mayor and council of
said Town to grant unto the appellee a permit for the estab-
lishment and operation of a junk-yard.

For many years, a junk-yard had been conducted upon
property, zoned Heavy Industrial and located within the cor-
porate limits of the Town, which was owned by Samuel J.
Berg and his wife (the Bergs). During 1956 and for some-
time prior thereto, the Bergs had leased their said property
to a Morris Gordon, who conducted a junk-yard thereon.
Pursuant to powers granted in its charter, the Town had
enacted an ordinance (No. 41) which required a permit to
establish or maintain a junk-yard, and Gordon had such a
permit. In early 1957, the mayor and council learned that
Gordon was planning to discontinue his junk-yard operations
as of April 1, 1957. The mayor wrote the Bergs and in-
formed them that if Gordon terminated his activities, the per-
mit would be cancelled; and, if any other person desired to
operate a junk-yard on their property, a new permit would
be required. Shortly thereafter, the appellee, who is a son
of the Bergs, made a request of the Town's clerk that he be
granted a permit, but was informed he would have to present
his request to the mayor and council. At the regular meeting
of the mayor and council on May 20, 1957, the appellee made
application for his permit, but action was delayed until the
next regular meeting. In the period between May 20, 1957,
and this next meeting on June 3, 1957, one of the councilmen,

a Mr. Campbell, prepared a written statement entitled "Memorandum To: Mayor and Council." In this statement, the councilman expressed his opinion that it would be inadvisable to grant the appellee's request and his reasons therefor. At the meeting on June 3, 1957, which was attended by the appellee and his counsel, this statement was read. The appellee and members of the public in attendance were heard, and thereafter the governing body voted unanimously to deny the permit. The appellee then filed his petition for a writ of *mandamus* in the Circuit Court and the case was tried before a judge and jury. At the conclusion of the taking of testimony, the judge directed a verdict in favor of the appellee on the grounds that Ordinance No. 41 was unconstitutional and void, and the action of the mayor and council in denying the permit was arbitrary and capricious. The judge also directed the mayor and council to issue a permit to the appellee, which they did; and this permit will not expire until sometime in the summer of 1958, unless we reverse the action of the trial judge. Thereafter, effective September 3, 1957, the mayor and council repealed and re-enacted, with amendments, Ordinance No. 41.

I

The appellee filed a motion to dismiss the appeal on the ground that the question is now moot. He asserts that by repealing Ordinance No. 41, which was in effect when he made application for a permit, the mayor and council rendered the question raised herein moot, and this Court will not decide a moot question. Had the mayor and council merely repealed Ordinance No. 41, there would be considerable plausibility to this contention; because no permit from the Town would then be required to operate the junk-yard. But they repealed and re-enacted said ordinance so as to make it still unlawful to conduct a junk-yard without a permit; therefore the validity of the present permit of the appellee from now until its expiration date is to be determined by this appeal, so the motion to dismiss must be overruled.

II

We stated above that the trial court decided the ordinance

was unconstitutional, and the refusal to grant the permit was arbitrary and unlawful. Section 46 of the Town's charter (ch. 341, Acts of 1947) grants it the power to pass ordinances for the welfare, health, safety and improvement of the Town, and to exercise the police power. The ordinance in question defined what was to be considered a junk-yard, made it unlawful to establish or maintain a junk-yard without obtaining a permit from the Town, and reserved the right in the mayor and council in *granting* such permits to make the same subject to "such restrictions * * * as may be best suited to the particular locality, taking into consideration fire hazards, health menaces, comfort and safety, and general welfare of the residents and community in the vicinity thereof." The ordinance did not explicitly give the mayor and council the right to deny such a permit, but the appellant argues that this authority was implicit therein. The trial judge thought the ordinance unconstitutional because it failed to set forth any rules, guides or standards for granting or refusing the permits. While this overlooks the fact that the ordinance does not delegate to subordinate officials the duty of issuing the permits, but anticipates the administration of the ordinance by the mayor and councilmen themselves, *Commissioners of Easton v. Covey*, 74 Md. 262, 267, 22 A. 266; *Farmers and Planters Co. v. Salisbury*, 136 Md. 617, 621, 111 A. 112; *Pocomoke City v. Oil Co.*, 162 Md. 368, 376, 159 A. 902; *Benner v. Tribbitt*, 190 Md. 6, 21, 22, 57 A. 2d 346, we find it unnecessary to pass upon the constitutionality of the ordinance.

If we assume, without deciding, the ordinance was valid, and the right of the mayor and council to deny the issuance of a permit was implicit therein, we think the action of the mayor and council in denying the permit in this case was not reasonably necessary for the protection of the public health, safety, morals, comfort or welfare, which is the test to be applied. The prohibited use was not in itself unlawful, nor was it such as to create a nuisance *per se, Feldstein v. Kammauf*, 209 Md. 479, 487, 121 A. 2d 716; therefore its prohibition can only be justified on the ground that it is a legitimate exercise of the police power, which had been delegated

to the Town. In denying the request for a permit in the instant case, the Town itself was directly exercising, as distinguished from the case where a board or commissioner passes upon the granting of a permit, the entire police power. When this occurs, the only limitation upon its right to exercise the power is that it must act impartially, and any interference with the unrestricted use of private property must be reasonably necessary for the protection of the public health, safety, comfort, morals or welfare and consistent with the prohibitions of the Constitution. *Pocomoke City v. Oil Co., supra,* 162 Md. 376, 377. Whether such restrictions are reasonable in fact is a judicial question, and the burden of proof in any such inquiry is upon him who challenges their validity. *Ibid.* p. 380.

It is difficult to discover from the record in the case at bar how the mayor and council concluded that it was reasonably *necessary* for the protection of the public health, safety, *etc.,* to discontinue the business that had been carried on in that particular spot for over thirty years. As stated before, it was not illegal or a nuisance *per se;* nor was it claimed to have been operated so as to constitute a nuisance. The business was a legitimate one, licensed in some jurisdictions by the State. Art. 56, sec. 234 (Code 1957). A legitimate business, of course, may constitute a nuisance if improperly conducted. *Bishop Processing Co. v. Davis,* 213 Md. 465, 132 A. 2d 445. The location was on property that was zoned Heavy Industrial (the least restricted in use), as well as adjacent property. In so far as the zoning is concerned, it permits the operation of junk-yards. While the zoning is not controlling in this case, it is a factor that should be considered. The business conducted, and intended to be conducted, consisted of buying and selling metals of different kinds. This entailed, as a portion of the business, the purchase of old automobiles from which the metal parts were salvaged. In most instances, when burning away the unusable parts was necessary, this was done before the automobiles were brought to the place of business. The applicant for the permit does not anticipate, and the business as previously conducted did not participate in, the handling of old rags or

paper. There was no contention that rats, mice, vermin or other carriers of communicable diseases infested the premises; nor was there any showing of increased traffic hazards. In fact one witness, the only private citizen called to testify upon the subject, stated she had made her home, for years, just across the street, and she had no objection to the granting of the permit.

The only subjects relied upon by the appellant, in its brief to show that its action was proper, were that no limit was expressed by the applicant as to the height the materials in the yard would be piled, on occasions the interior of automobiles would be burnt out, and that at the hearing on the application no answer was given as to what would be done with the oil and gasoline which might be brought into the yard in old automobiles (at the trial Samuel J. Berg testified the tanks would be punctured and the gasoline drained before the cars were dismantled). It should be apparent that any, or all, of the above objections could be reached by proper regulatory measures, without the necessity of prohibiting the operation of a lawful business (Cf. *Town of Gaithersburg v. Dosh,* 201 Md. 291, 294, 93 A. 2d 747) even if we assume, without deciding, that the mayor and council may have had the power to exclude from certain designated areas the operation of junk-yards.

The testimony makes it very clear that the mayor and council have adopted as a policy the elimination of junk-yards from within the corporate limits of the Town, because they are not "very nice." The method of carrying out this policy is to permit anyone in business to continue to operate until he stops, but, when that individual ceases business operations, no permit will be issued to another, who desires to take his place; and no new permits will be issued. During 1956 and for some years prior thereto, there were four junk-yards in the Town. To-day there are three: one operating by permit from the mayor and council within two blocks of the appellee's place of business; another which is operating after a permit was denied; and the appellee's. The fourth ceased when a permit was denied. It is difficult to understand that if it were reasonably necessary for the public health, safety, comfort or

welfare to restrict the use of Berg's private property by prohibiting the operation of a junk-yard thereon, why the mayor and council should consider it proper that other junk-yards should continue operations until there is a change of ownership. As indicated above, we are unable to conclude, after due regard for the presumption that the action of the mayor and council was correct, that it was reasonably necessary for the protection of the public health, safety, comfort, morals or welfare to prohibit the operations of the junk-yard by the appellee.

### III

The appellant complained that the trial judge unduly restricted its testimony. It claims that the trial court denied it the right to show that the mayor and council had received complaints of fires and smoke at junk-yard premises, including the premises under present consideration, and the mayor and council had found that unless junk-yards were surrounded by tight enclosures, they contributed to juvenile delinquency. If we assume, without deciding, this evidence was admissible, it does no more than relate, under the circumstances of this case, to matters that were proper subjects for regulatory consideration, but not for total prohibition.

*Judgment and order affirmed, with costs.*

BRUNE, C. J., concurring in the result, filed the following concurring opinion.

I concur in the result in this case because I think that the evidence on behalf of the appellee meets the burden of proof required under decisions of this Court in such cases as *Pocomoke City v. Standard Oil Co.,* 162 Md. 368, 159 A. 902, and *Benner v. Tribbitt,* 190 Md. 6, 57 A. 2d 346, to show that the denial of the permit was not a valid exercise of the police power. That is, the appellee met the burden of showing that the denial of the permit was not "reasonably necessary for the adequate protection of the public welfare, safety, health, comfort, or morals." (See the *Pocomoke City* case, 162 Md. at 379-380.) I do not think that the evidence proffered by

the Town and excluded by the trial court would have altered the result.

My first difficulty with the majority opinion is that, although it cites the rules established by our prior decisions under which the validity of a *legislative* exercise of the police power in cases such as this is to be tested, it contains some language which seems to imply a limitation upon the exercise of such power which, in my judgment, runs counter to the rules cited. Such an implication is, I think, contained in the statement that "It is difficult to discover from the record in the case at bar how the mayor and council concluded it was reasonably *necessary* for the protection of the public health, safety, etc., to discontinue the business that had been carried on in that particular spot for over thirty years." This statement implies that the legislative body was under an obligation to establish affirmatively the reasonableness of its action as an exercise of the police power. I think that the majority opinion leaves the way open to drawing such an inference, even though the opinion elsewhere recognizes that the burden of proof rests upon the person attacking the legislative action to establish its invalidity, and I fear that this possible inference may give rise to some confusion in a field where I believe the law to be well settled.

On this matter *M. & C. C. of Baltimore v. Biermann,* 187 Md. 514, 50 A. 2d 804, seems very much in point. There the Board of Zoning Appeals was acting in the exercise of original, rather than appellate, jurisdiction in passing upon an application to establish a filling station, which had been denied by the Buildings Engineer, who had no discretion to do otherwise. To grant the permit required the affirmative vote of four of the five members of the Board. Only three voted for it, and the other two, by refusing to do so, exercised a veto power. This Court, in an opinion by Judge Henderson, held that the question was "not whether there was substantial evidence before the Board to support a minority finding, but whether there was a reasonable basis in fact to support the refusal as an exercise of the police power." *Ellicott v. Baltimore,* 180 Md. 176, 23 A. 2d 649, *Kramer v. Baltimore,* 166 Md. 324, 171 A. 70, and the *Pocomoke City* case, *supra,*

were cited; and *Anne Arundel County Com'rs v. Ward,* 186 Md. 330, 46 A. 2d 684, was referred to for comparison.

The Court then said: "Considering the action of the Board as an exercise of delegated legislative, or quasi legislative, power, the scope of review is different and in some respects more limited than where the action is quasi judicial; *e. g.,* the court must find that the result of the action is beyond the police power and deprives the applicant of property without due process of law. On this question the property owner has the heavy burden of overcoming the presumption of constitutionality of legislative action, even if the legislative body acted without evidence at all."

I do not believe that there is actually any difference of opinion between those who joined in the majority opinion and those who concurred in the result as to where the burden of proof lies as to the validity of legislative action such as that attacked in this case. I hope that the fear of confusion here expressed will not materialize, and that this concurring opinion may help to prevent it.

The second difficulty which I find in the majority opinion is that it seems to imply a greater protection for the continuation of a business which may be or become objectionable in a given area than is necessary to a decision of this case or than I believe to be the law. Though this is not a zoning case and though it is conceded that the existing zoning regulations permit a junk yard in the area here involved, the majority opinion seems to adopt an analogy to non-conforming uses under zoning regulations and to imply that such uses and, by analogy, the use here involved are entitled to protection for an indefinite period. A quite different result was reached by this Court in an actual zoning case where the question was squarely presented. *Grant v. City of Baltimore,* 212 Md. 301, 129 A. 2d 363. In connection with this phase of the case it should also be noted that the extent of the police power here granted to the Town was far greater than the restricted powers of regulation granted to municipalities in such cases as *Gaithersburg v. Dosh,* 201 Md. 291, 93 A. 2d 747, and *Mt. Airy v. Sappington,* 195 Md. 259, 73 A. 2d 449. The majority opinion seems to me to cast unneces-

sary shadows over the power of the Town to deal with such problems in the future.

Judge HENDERSON has authorized me to state that he joins in the views above expressed.