STOTTLEMYER ET UX. *v.* CRAMPTON ET AL.

[No. 322, September Term, 1963.]

140

*Decided June 1, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*John S. Hollyday* for the appellants.

*W. Warren Stultz* for the appellees.

SYBERT, J., delivered the opinion of the Court.

The appellants, Austin S. Stottlemyer and Fannie M. Stottlemyer, his wife, appeal from a decree of the Circuit Court for Washington County which enjoined them from driving their cattle upon the public road leading through an unincorporated village known as Antietam Furnace. The bill of complaint filed by the appellees, who were residents of Antietam Furnace and landowners therein, alleged that the driving of cattle through the village constituted a nuisance due to (1) impediment of traffic, (2) the dropping of manure, and (3) damage to their

properties. The appellants answered, denying the material allegations of the bill. The Chancellor, after hearing evidence and viewing the area in question, found no damage to the properties of the appellees sufficient to justify injunctive relief, but granted the injunction on the basis that the driving of the cattle through the village constituted a nuisance since it caused congestion of traffic and resulted in considerable manure on the road. The Chancellor also found that there was a lane on the appellants' property over which they could drive their cattle to pasture, rather than utilizing the road going through the village. This, however, was disputed by the appellants.

Antietam Furnace consists of approximately 14 houses and has a population, it was agreed, of about 51 persons. The right of way of the road through the village is 30 feet wide, with a paved surface of 12 feet and gravel shoulders of 2 feet on each side. The appellants, as well as their predecessor in title, Mrs. Stottlemyer's father, have driven cattle through the village for at least 35 years. It has been the appellants' custom to drive their herd, usually consisting of from 40 to 50 head, through Antietam Furnace from their cattle barn on the north edge of the village to their pasture fields on the south edge at about 8 A.M., and to retrace the course at about 5:00 P.M. The total distance the cattle are driven is about 1200 feet, and the trip takes, according to the witnesses, from 3½ to 5 minutes.

The Chancellor found that when the cattle were being driven through the village, there was "some congestion of other traffic", but that it was not "too substantial". The testimony showed that on some occasions up to 4 or 5 cars were delayed by the cows for very brief periods of time. In prior years school buses sometimes encountered the cattle, but were not delayed in meeting their schedules. There was testimony that during the present school year, the buses have not met the cows. The real complaint of the appellees concerned the droppings left on the road by the cattle. The appellees offered testimony that the manure was tracked into school buses and into a store fronting on the road which belonged to one of the appellees; that the manure created an ill-smelling odor; and that the privilege of walking along the road was "just about taken away" by the manure. However, the appellants elicited testimony from two county

142

Health Department sanitarians that the manure was not dangerous to health, and from other witnesses statements that there was no undue amount of manure or unpleasant odors, and that what was present did not interfere with their use of the road. The appellees introduced several photographs of the herd on the road, but not much manure is discernible in them.

The authorities are in accord that the driving of cattle to pasture along a public road is not in itself unlawful and does not constitute a nuisance *per se.* "Under this right [to use public roads], a person may use the highway for the purpose of leading or driving cattle". 40 C.J.S., *Highways,* sec. 233, p. 245. "A drover with cattle or horses, mules, sheep, or any other domestic animals has a right upon the public highway". Anno., 11 A.L.R. 1405. It is said in *Restatement, Torts,* sec. 505, comment a, that "as part of his privilege to use a public highway * * * one in possession of livestock is privileged to drive them upon it for any legitimate purpose such as bringing them to market or taking them to pasture". The right of a possessor of livestock to drive his animals along public highways was recognized and protected by the courts at common law. See *Mills v. Stark,* 4 N. H., 512, 514 (1829), and the early English cases cited therein; *Jackson v. Rutland & Burlington Railroad Co.,* 25 Vt. 150 (1853) ; *Amstein v. Gardner,* 132 Mass. 28, 29-30 (1882) ; *Wood v. Snider,* 79 N. E. 858 (N. Y. 1907) ; *Ingham, The Law of Animals,* sec. 75, p. 279; 2 Harper and James, *The Law of Torts,* sec. 14.9, p. 824; 2 *Cooley, Torts* (4th ed.) sec. 265.

The age of the automobile has not eliminated the ancient right. "The plaintiff had as good a right to drive his cows along the highways as the defendant had to drive his automobile over it", *Bombard v. Newton,* 111 Atl. 510 (Vt. 1920). "A farmer has the same right to the use of the highways of this State * * * as any other citizen, and this includes the right * * * to herd his livestock from one place to another", *Draffin v. Massey,* 92 S. E. 2d 38 (Ga. 1956). "The owners of cattle have a fundamental and historic right to the use of the highways" in herding cattle, *Burback v. Bucher,* 355 P. 2d 981 (Wash. 1960). See also *Green v. Biles-Coleman Lumber Company,* 362 P. 2d 593 (Wash. 1961) ; and *Prosser, Torts* (2d ed.), sec.

57, p. 321 (where the author suggests that while the privilege at common law to herd cattle over public highways extended to city streets, "this might now be negligence in large cities"). The Maryland Legislature has tacitly recognized the common law rule by the adoption of Chapter 475 of the Acts of 1918, codified as Code (1957), Art. 66C, sec. 467, which provides, *inter alia,* that it is unlawful to drive a herd of cattle or other livestock on a highway unless attended in the front and rear by competent persons, but which exempts farmers or dairymen in driving their herds to and from pasture or to and from different farms or parts of farms owned or occupied by them. (The testimony in the instant case shows that the herd of the appellants was usually attended, in the front and rear, while on the highway.)

However, while the activity of the appellants is lawful, the question remains as to whether or not it has been carried on in such a manner as to constitute a nuisance. Legality is not conclusive. As was stated in the leading case of *Swimming Club v. Albert,* 173 Md. 641, 645, 197 Atl. 146 (1938), in quoting the opinion of the lower court with approval:

> " 'The law is clear that where a trade or business as carried on interferes with the reasonable and comfortable enjoyment by another of his property, a wrong is done to a neighboring owner * * *. In such cases it makes no difference that the business was lawful and one useful to the public and conducted in the most approved method. * * *
>
> " 'The rule which must control is whether the nuisance complained of will or does produce such a condition of things as in the judgment of reasonable men is naturally productive of actual physical discomfort to persons of ordinary sensibilities, tastes, and habits, such as in view of the circumstances of the case is unreasonable and in derogation of the rights of the party * * * subject to the qualification that it is not every inconvenience that will call forth the restraining power of a court. The injury must be of such a character as to diminish materially the value of the property as

a dwelling and seriously interfere with the ordinary comfort and enjoyment of it. * * *' "

See also, *Carr's Beach v. Annapolis Roads,* 222 Md. 392, 397, 160 A. 2d 598 (1960) ; *Bishop Processing Co. v. Davis,* 213 Md. 465, 474, 132 A. 2d 445 (1957) ; *Gorman v. Sabo,* 210 Md. 155, 159, 122 A. 2d 475 (1956) ; *Feldstein v. Kammauf,* 209 Md. 479, 484, 121 A. 2d 716 (1956).

On the record before us, we are unable to find that the evidence measures up to the tests laid down in the cases in order to warrant injunctive relief. We think that while the appellees have shown that the periodic bovine excursions and their lingering residue occasion some inconvenience and annoyance to them, there was insufficient proof to show that they caused "actual physical discomfort" to persons in the area, or were "of such a character as to diminish materially the value" of the appellees' properties or "seriously interfere with the ordinary comfort and enjoyment" of them.

There was no evidence of any diminution in the value of any of the appellees' properties, and, with reference to occasional damage to grass and flowers on some of the properties, the Chancellor held that "this source of annoyance was not of such a substantial character as to justify injunctive relief." The obstruction of traffic for a few minutes, the presence of manure on the highway, and the occasional tracking of it into buildings, are not inconveniences serious enough in degree in a rural community as to amount to nuisances calling for the restraining power of a court. The use and enjoyment of the appellees' properties were not shown to have been affected in any manner other than that which normally should be expected by persons living along a rural road over which farmers had the right, by law and custom, to drive cattle. That the condition complained of was not really "serious" is indicated by the fact that, while cattle have been driven over the road for at least 35 years, as long as 10 years ago one of the appellees complained to the appellants about the driving of cattle through the village, but no action was taken to stop the appellants from using the road, until this suit was instituted. Nor was the evidence of physical discomfort substantial enough to invoke the injunctive process.

The major causes of complaint by the appellees—the traffic congestion and manure on the road — were necessary consequences and inevitable incidents of the appellants' exercise of their right to use the road to drive cattle to pasture. As this Court stated in *Lohmuller v. S. Kirk and Son Co.*, 133 Md. 78, 90, 104 Atl. 270 (1918), in denying an injunction against an alleged nuisance, "the plaintiffs cannot hope to escape the annoyances that are to be expected in the neighborhood in which they are located and which are incident to the reasonable and lawful enjoyment of the property of their neighbors." The same reasoning is applicable to the facts of the present case. Cf. *Wood v. Snider, supra* (at p. 860 of 79 N. E.).

Since the appellants are entitled to use the public highway in driving their cattle to pasture, the question whether there is a lane on the appellants' property which might be used for this purpose is immaterial. (The appellants claimed that the lane is hilly and dangerous for the cattle, and that it would require fencing to keep the animals out of cultivated fields. The Chancellor, after inspection, found the lane adequate for the purpose.)

We therefore hold that the appellees have failed to show that the appellants' actions were sufficient to constitute a nuisance which would be the proper subject of injunctive relief. Thus the decree will be reversed.

*Decree reversed, with costs, and bill of complaint dismissed.*